### JOHNSEN v. UNITED STATES.
### No. 5939.

Circuit Court of Appeals, Ninth Circuit.
May 19, 1930.

Goldman & Nye, Reed M. Clarke and Robert B. McMillan, all of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge.

Appellant was adjudged guilty on an indictment charging him, in two counts, with the commission of perjury while he was giving testimony in the trial of a certain proceeding in the United States District Court at San Francisco having to do with the smuggling of intoxicating liquor into the United States.

For some time he had been, and when he gave the testimony he was, a chief boatswain in the United States Coast Guard. Upon his arraignment he filed a plea of former conviction and former jeopardy in which he exhibited the proceedings taken in and by the United States Coast Guard Court in the California Division, wherein he was tried and convicted for the misconduct constituting the basis of the two counts herein. The punishment there imposed consisted of six months' suspension from duty upon half-duty pay. The government concedes that the plea is in due form and with sufficient fullness sets forth the proceedings relied upon, and, further, that the specifications embraced in the charges before the Coast Guard Court are of the false testimony herein charged. Upon demurrer thereto, the court below held that the facts set up in the plea constituted no defense, and this ruling appellant assigns as error.

The government in effect concedes that, if the Coast Guard Court was vested with jurisdiction to entertain charges of, and to inflict punishment for, perjury, as such, the plea should have been sustained. Grafton v. United States, 206 U. S. 333, 27 S. Ct. 749, 51 L. Ed. 1084, 11 Ann. Cas. 640.

Coast Guard Courts were created by the Act of May 26, 1906 (34 Stat. 200 [14 US CA §§ 35, 142–147]); and by reference to the act it will be seen that their jurisdiction is strictly limited. Section 2 (14 USCA § 142) recognizes the right of a commander of a vessel of the Revenue Cutter (Coast Guard) Service to inflict punishment for specified acts of misconduct. Section 3 (14 USCA § 143), which is the particular section upon which appellant relies, after referring to "offenses against the discipline of the Revenue-Cutter [Coast Guard] Service too grave in character to be adequately dealt with directly by the commanding officer," declares that they may be punished by the Revenue Cutter (Coast Guard) Service Courts to be constituted and convened as therein provided, and that the jurisdiction of such "courts shall be limited to the following offenses, namely: Disobeying lawful order of superior officer, refusing to obey lawful order of superior officer; striking, assaulting, or attempting or threatening to strike or assault a superior officer while in the execution of the duties of his office; drunkenness on duty; drunkenness; gambling; misappropriation of mess funds; misuse of Government property or supplies; fraudulently signing vouchers; theft in an amount under one hundred dollars; scandalous conduct tending to the destruction of good morals; desertion; absence from duty without leave or after leave has expired; neglect of duty; conduct unbecoming an officer and a gentleman; malicious or willful destruction of public property; aiding or enticing others to desert; smuggling liquor on board a vessel of the Revenue-Cutter Service; cruelty toward or oppression or maltreatment of any subordinate person in the Service; using obscene or abusive language; violating or refusing obedience to any lawful order or regulation issued by the Secretary of the Treasury or the President."

There follows a description of the punishments that may be inflicted, the most severe for commissioned officers being two years' imprisonment, and for others imprisonment for one year.

And section 7 (14 USCA § 144) provides: "That for offenses against the laws

**46**

of the United States other than those specified in this Act, offenders shall be turned over to the civil authorities for trial."

It will be noted that "perjury" is not mentioned in section 3, or, for that matter, in any other part of the act. If within the jurisdiction of the Coast Guard Courts, it must be so by virtue of the general clause, "scandalous conduct tending to the destruction of good morals," or "conduct unbecoming an officer and a gentleman." While undoubtedly perjury may very properly be characterized as both "scandalous" and "unbecoming," when we consider that the intent is expressed to confer jurisdiction only of "offenses against the discipline" of the Service, that most, if not all, of the specified offenses relate directly to such discipline, that no major criminal offense is specified, but to the contrary in case of theft jurisdiction is limited to amounts under $100, and when we further consider that only comparatively light punishments may be imposed, it is difficult to believe that Congress intended to include perjury, as such, under either of the general clauses referred to. If perjury is within such jurisdiction, by parity of reasoning it must be held that the jurisdiction also extends to charges of the most heinous offenses, such as murder and treason. And, if the graver offenses were intended, why, in respect of theft, limit the jurisdiction to cases where the amount involved is less than $100?

Possibly here the Coast Guard Court had jurisdiction to punish appellant's conduct as "tending to the destruction of good morals" or "as unbecoming an officer and a gentleman"; that question is not for our decision. But such power would not necessarily imply jurisdiction to punish for the offense of perjury as such. A kindred question arose in the case of Carter v. McClaughry, 183 U. S. 365, 22 S. Ct. 181, 193, 46 L. Ed. 236, where in respect of it the court said: "But the offense of conduct unbecoming an officer and a gentleman is not the same offense as conspiracy to defraud or the causing of false and fraudulent claims to be made, although to be guilty of the latter involves being guilty of the former."

With these considerations is mind, conclusive, we think, is section 7, as above set forth. The perjury here under consideration is an "offense against the laws of the United States," and is not "specified" in the act; therefore, by the express terms of this section, it is left within the exclusive jurisdiction of the civil authorities.

We conclude that the lower court was right in holding that the plea was of no avail.

Though no such suggestion was made in the court below and though covered by no assignment of error, appellant now for the first time makes the contention that upon neither count is the evidence sufficient to support the verdict. Specifically his position under the first count is that before the termination of the hearing in which his testimony was given he retracted the statement charged to be false; and, under the second, it is not shown by sufficient evidence to put the matter beyond all reasonable doubt that he *willfully* gave the untrue testimony.

In the Keizo Shibata Case (C. C. A.) 35 F.(2d) 636, we did not, as appellant seems to assume, decide that retraction defeats a charge of perjury; the question was left open. And it cannot be said that under the decided cases such a rule is well established. Considering the reasons there suggested, it may be that a retraction seasonably and voluntarily made should be encouraged by relieving the party of the consequences of perjury; but, in the absence of a ruling by the trial court upon a record made up carefully and fully to present the circumstances surrounding the alleged retraction, we do not feel warranted in deciding a question of such importance. In short, we do not think that, in the absence of a ruling and exception in the lower court and of an assignment here, the record is such that it may be said that judgment should be reversed to "correct obvious errors" or to "prevent manifest injustice." Indeed, if it were to be held that under the circumstances shown the retraction constituted a complete defense, we are of the opinion that the evidence under the second count was ample to support that branch of the verdict; and the judgment is such that it is not to be reversed if conviction under either count is sustained.

It will therefore be affirmed.

WILBUR, Circuit Judge (concurring).

I concur in the judgment and, in the main, with the reasoning of Judge DIETRICH. Perjury is punishable by Naval Courts Martial under the laws of the United States. 2 Stat. 45, art. 3; 12 Stat. 600, R. S. § 1624, 34 USCA § 1200; 6 Op. Attys. Gen., Naval Courts and Boards, pp. 233, 290. The charge is usually made as "scandalous conduct tending to the destruction of good morals," and the specification thereunder alleges the facts constituting the perjury. Naval Courts and Boards, § 290. The Sec-

retary has adopted a similar method of procedure for that service. Coast Guard Courts and Boards of 1923, § 202. These regulations for the Coast Guard are promulgated under the authority of Congress. See act referred to in main opinion, 34 Stat. 200 (14 USCA §§ 35, 142–147). In view of this situation, if there were not other controlling considerations, I would be inclined to hold that, when Congress adopted the phrase in the law giving jurisdiction to the courts-martial in the Coast Guard so long used in the Navy to charge perjury that it thereby conferred such jurisdiction upon the Coast Guard. That is, by conferring jurisdiction upon its courts-martial to try its members for "scandalous conduct to the prejudice of good morals," it thereby conferred upon them jurisdiction over a charge of perjury. The phrase "scandalous conduct to the prejudice of good morals" is a stranger to the common law, but has long been a familiar one in military law. It is found in the act of Congress 1800 enacting the articles of war for the government of the Navy (2 Stat. 45, art. 3). Its application and meaning has been developed, not only in our own military, naval, and marine courts-martial, but also in similar courts-martial of Great Britain, and, so far as it has been so fixed, it must be deemed to be adopted by Congress in conferring jurisdiction on the Coast Guard courts-martial. No one would doubt that perjury "tended to the destruction of good morals" or that it was "scandalous conduct" in a general or abstract sense. However, the charge of perjury has been specially dealt with. At the present time, jurisdiction to try its personnel for perjury is conferred on the Navy by 34 USCA § 1200, art. 8, formerly article 22 (see Smith v. Whitney, 116 U. S. 167, 181, 6 S. Ct. 570, 29 L. Ed. 601), and similarly on the Army courts-martial (Ex parte Reed, 100 U. S. 13, 25 L. Ed. 538). It follows that the manner of charging perjury is no longer significant in the Army or Navy from a jurisdictional point. Their jurisdiction over their personnel is clear.

It appears, however, that the jurisdiction of courts-martial over the offense of perjury has been a subject of special consideration both in this country and in England.

It has been said that false swearing before a court-martial was not an offense at common law (Davis, Military Law, 455, same page in 3d Ed.; Hough on Courts Martial, 1825; see statement of Lord Chief Justice Mansfield quoted in Hough, supra, pp. 417, 418), although Chief Baron Gilbert seemed to hold otherwise (see Tytler on Military Law, 1814). Our Congress in 1799 (1 Stat. 709) provided that "prevarication" before a court-martial should be punished by the courts-martial, but that "wilful perjury shall and may be punished by indictment," etc. This rule was again re-enacted by Congress in 1800 (2 Stat. 45, art. 37). The same legislation was adopted by Parliament (Mutiny Act, see ex lix 824; 4 Geo. 4, lxiv of Mutiny Act). See 22 Geo. II, Chap. 32, Sec. 17, cited in McArthur on Military Law (1806) vol. 2, p. 141. Perjury was charged in the Army courts-martial as conduct to the "prejudice of good order and discipline," and article 99 of the Articles of War. See Winthrop Military Digest of 1868, subject "Perjury." Finally the jurisdiction of Army and Navy courts-martial was extended to cover all crimes not otherwise specified, and hence of course included perjury. The same increased jurisdiction has been conferred in Great Britain. Cochrane on Military Law, 1884, citing Army Act 1881, § 4—a, c. 4, p. 127.

In view of the fact that, as early as 1800, Congress conferred jurisdiction upon naval courts-martial over "scandalous conduct tending to the destruction of good morals" (2 Stat. 45, art. 3), and in the same statute, volume 2, p. 45, art. 37, made a special provision for the punishment of "deliberate and wilful perjury before a court-martial" by indictment, and perhaps made it mandatory by requiring that it "shall and may be" so prosecuted, that Congress then recognized a distinction between "perjury" and "scandalous conduct," etc., for the purposes of prosecution.

In view of this special recognition of perjury in military law, I am inclined to conclude that, while perjury committed in the affairs of the Coast Guard, in violation of oaths taken before its courts-martial or in connection with its administration, would be "scandalous conduct to the prejudice of good morals," an offense against the discipline of the Coast Guard within the meaning of the act of Congress (14 USCA § 143, 34 Stat. 200, § 3), that perjury committed before a United States District Court, as a witness in a trial, is more appropriately triable under the criminal law by indictment, and that therefore when Congress conferred jurisdiction on the Coast Guard courts-martial in general terms over charges of scandalous conduct, etc., it did not intend thereby to confer jurisdiction over such an offense so committed, before a United States court, because of the special reservation to which Judge DIETRICH refers in his opinion, "that for offenses against the laws of the United States

48

other than those specified in this act offenders shall be turned over to the civil authorities."

It is unnecessary here to consider the question as to whether such an offense so committed against another sovereignty than the United States could be taken cognizance of by a court-martial of the Coast Guard as an offense against the discipline of the Coast Guard. See Grafton v. U. S., 206 U. S. 333, 353, 27 S. Ct. 749, 51 L. Ed. 1084, 11 Ann. Cas. 640; Fox v. Ohio, 5 How. 410, 453, 12 L. Ed. 213; U. S. v. Marigold, 9 How. 560, 13 L. Ed. 257; Moore v. State of Illinois, 14 How. 13, 19, 20, 14 L. Ed. 306; In re Stubbs [C. C.] 133 F. 1012.

Notwithstanding the fact that the perjury charged by the Coast Guard in its courts-martial concerned the duties of the appellant as a member thereof, I concur in the conclusion that this is an offense against the laws of the United States which Congress directed to turn over to the civil authorities for prosecution and for that reason that the Coast Guard courts-martial had no jurisdiction thereof.