Richard A. WOODRING, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19184.

United States Court of Appeals
Ninth Circuit.

Sept. 16, 1964.

Rehearing Denied Nov. 4, 1964.

Eugene V. Miller, Dallas L. Phillips, Fairbanks, Alaska, for appellant.

Joseph J. Cella, U. S. Atty., Patrick Thomas Moran, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

CHAMBERS, Circuit Judge.

Two Alaska juries seem to think that Woodring robbed the Airport Road Branch of the Alaska National Bank, Fairbanks, on January 12, 1959. He has been twice convicted and sentenced for doing so.

Now the question really comes down to: Does he get a legal windfall out of the awkward transition from the Territorial Courts of Alaska to the United States District Court for the District of Alaska now operating in the State of Alaska?

The Alaska Enabling Act, Public Law 85–508, July 7, 1958, provided for the old territorial courts to operate for awhile after statehood and to administer both federal and state justice. The old territorial courts, after statehood was proclaimed on January 3, 1959, (24 F.R. 81) until their demise by presidential proclamation (25 F.R. 1584), became known popularly as the "Interim Courts."

For the federal offense here, Woodring was first indicted by a grand jury impaneled by the interim court, which was a federal court at least in the sense that it was supported wholly by the federal government. As the interim court was about to expire on February 20, 1960, by presidential proclamation, the judge of the interim court at Fairbanks transferred the case (the first indictment) to the

newly manned United States District Court for the District of Alaska. In the latter court, Woodring was first convicted in June, 1960, of the bank robbery.

We held that the Alaska Enabling Act was so unfortunately drawn that it just did not provide for the transfer of a criminal case arising with the interim court to the newly manned district court and that the district court then, over Woodring's objection, with the then history of the case, did not have the power to try him. Woodring v. United States, 9 Cir., 304 F.2d 308. (The act did provide for the transfer of cases pending on the date statehood became effective.)

So, in February, 1963, he was reindicted in the United States District Court for the District of Alaska and tried and convicted in September, 1963.

We do not deem it required or important even yet to delineate what were the powers of the interim court. That court may have inconvenienced Woodring, but it never legally hurt him. Also, we need not yet decide whether the United States District Court for the District of Alaska was created with statehood on January 3, 1959, or when it was organized later.

There is no doubt that Section 2113(a) of Title 18, United States Code, had been passed before January 12, 1959, the date of the robbery of the national bank with which we are here concerned.

■ Woodring is convinced that the United States District Court for the District of Alaska was not in existence on January 12, 1959, and therefore it could never acquire jurisdiction. He relies on Mizell v. Vickrey, 10 Cir., 36 F.2d 327, and United States v. Hall, 98 U.S. 343, 25 L.Ed. 180, for the latter proposition, assuming the first to be correct. We simply cannot get out of the two cases what appellant finds in them. If his thesis were correct, then one who robbed a national bank in Hawaii the day before statehood there could not have been indicted the day after statehood and tried in the constitutional court established by the Enabling Act for Hawaii, 73 Stat. 4. (We mention Hawaii simply because there the problems of transition were not confounded by the establishment of an interim court.)

If the existence of a court was necessary on January 9, 1959, the date of the robbery, which could receive an indictment and try the robber, we say there was one or more. In the thirteen months and seventeen days between proclamation of statehood and the second proclamation, February 20, 1960, we say there was no judicial vacuum. Perhaps the United States District Court for the District of Alaska had an existence from January 3, 1959, before it was staffed. Perhaps it didn't. Perhaps there were two courts with concurrent jurisdiction. If Woodring had been legally damaged by anything done by a court (or something passing as a court) prior to the demise of the interim court, it might be necessary to decide the court's status in the interim period. To define now the status of the court or courts would be dicta. That issue should be resolved for parties that are vitally interested.

We find the one objection to the rejection of evidence without merit.

■ Woodring also asserts the double jeopardy clause of the Fifth Amendment to the Constitution. Our first decision was that when the United States District Court for the District of Alaska first tried Woodring (because of the quirk of how the case got into that court) that court simply had no jurisdiction—at least from the time Woodring, before trial, objected to it. If the trial court had no jurisdiction, Woodring just was not in jeopardy the first time. This he could have found out early by seeking the classic writ of prohibition. But he did not. Now he complains of the anxiety and embarrassment of two trials.

■ It is well established that one who secures a reversal of a conviction on a mere error of law is not subjected to double jeopardy when he is retried. See United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448. Obviously a retrial, when at the first trial the court did not have jurisdiction, presents an a

fortiori situation for non-double jeopardy.

 Woodring also attacks the sufficiency of the evidence, much of which was circumstantial. We have reviewed the evidence and find that although the jury might have found the defendant not guilty (and still have been true to its oath), yet there was an abundance of evidence from which it could have found beyond a reasonable doubt that he was guilty. "Beyond a reasonable doubt" does not mean "inescapably."

(The foregoing opinion assumes a familiarity with Parker v. McCarrey, 9 Cir., 268 F.2d 907; Mahlum v. Carlson, 9 Cir., 304 F.2d 285; and the first Woodring case, supra.)

The judgment is affirmed.