**UNITED STATES of America,**
**Appellee,**

v.

**Michael Benjamin WEISSMAN,**
**Appellant.**

**No. 19820.**

United States Court of Appeals,
Eighth Circuit.

Sept. 25, 1970.

Rehearing Denied and Rehearing En Banc Denied Oct. 22, 1970.

Francis L. Ruppert, Clayton, Mo., for appellant; Frank Cihlar, Kunstler, Kunstler & Hyman, New York City, on the brief.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., on the brief.

Before MEHAFFY, HEANEY and BRIGHT, Circuit Judges.

MEHAFFY, Circuit Judge.

Weissman, appellant-defendant, appeals from a judgment of conviction resulting from a jury-waived trial under an indictment charging that he

"* * * willfully and knowingly did mutilate, destroy and change by tearing asunder his Selective Service registration certificate, Selective Service Form No. 2, which had theretofore been issued to him by Selective Service Board No. 101, Clayton, Missouri.

"In violation of Section 462(b), Title 50 App., United States Code."

We affirm.

On August 30, 1968 defendant participated in a demonstration in St. Louis

in front of the City Hall. He was in the front ranks when it was announced that he had something to say. His version of what he said appears in his testimony as follows:

"Q. Where were you standing at this time? A. Well, there was people speaking were up against Market Street, and there was sort of a semicircle, people back around there towards the City Hall. I was right up near the front of the semicircle.

"Q. What did you do then? A. Just about when they finished speaking, I stepped forward and said something like, 'I am going to declare my independence from the Selective Service System,' tore my cards in half, went over to Detective—the man who I thought was an FBI agent, and gave him the cards."

Defendant by his public act and admissions plainly violated the statute which has been constitutionally upheld by the Supreme Court in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). It was just such conduct which Congress made a criminal offense by the 1965 Amendment to the Act, 50 App., U.S.C. § 462.

On September 1, 1968 defendant wrote his local board requesting duplicate cards explaining that "I ripped my cards in half and gave them to a plainsclothes policeman * * *." Upon receiving this information, the local board mailed defendant SSS Form 6, which is a request for duplicate registration certificate or notice of classification. Defendant completed this form, indicating therein that both cards had been "destroyed," and returned it to the local board on September 6, 1968. The local board mailed the duplicate cards to defendant on the same day. On September 30, 1968 the local board received verification of defendant's continued attendance at college. On October 11, 1968 defendant was declared delinquent for "destruction of SSS Form 2 (registration certificate) and SSS Form 110 (notice of classification)"

and on October 30, 1968 a notice of delinquency was mailed to defendant.

Defendant was indicted on November 19, 1968 by the grand jury for the United States District Court for the Eastern District of Missouri, Eastern Division. He waived jury trial, and upon the trial after testimony had been introduced that he publicly tore his cards in two and handed the torn pieces to a police officer, he took the stand and admitted the act. We feel that we would be justified in summarily affirming this case under the teachings of O'Brien, supra, but defendant in brief has raised a number of issues deserving of comment.

It is first contended that defendant did not knowingly destroy, mutilate or in any manner change his selective service registration certificate so as to constitute a violation of the statute. Defendant attempts to distinguish O'Brien and argues that there was in fact no disruption of the smooth functioning of the system here as there was no burning of the cards and the pieces when put in juxtaposition admittedly were completely readable. In our view, this argument is specious. O'Brien, supra, was a card burning case and the defendant produced the charred remains of the certificate which were photographed. The Chief Justice noted the statute's pertinent parts on page 370, 88 S.Ct. on page 1675, when he quoted from the statute its applicability to anyone who " 'forges, alters, *knowingly destroys, knowingly mutilates,* or in any manner changes any such certificate * * *.' " Additionally, the Chief Justice commented as follows:

"By the 1965 Amendment, Congress added to § 12(b) (3) of the 1948 Act the provision here at issue, subjecting to criminal liability not only one who 'forges, alters, or in any manner changes' but also one who 'knowingly destroys, [or] knowingly mutilates' a certificate." 391 U.S. at 375, 88 S.Ct. at 1678.

On page 379, 88 S.Ct. on page 1680, the Chief Justice observed:

> "The smooth functioning of the system requires that local boards be continually aware of the status and whereabouts of registrants, and the destruction of certificates deprives the system of a potentially useful notice device."

While *O'Brien,* as in this case, only involved the registration card, the Chief Justice observed at page 381, 88 S.Ct. at page 1681:

> "We think it apparent that the continuing availability to each registrant of his Selective Service certificates substantially furthers the smooth and proper functioning of the system that Congress has established to raise armies. We think it also apparent that the Nation has a vital interest in having a system for raising armies that functions with maximum efficiency and is capable of easily and quickly responding to continually changing circumstances. For these reasons, the Government has a substantial interest in assuring the continuing availability of issued Selective Service certificates.

> "It is equally clear that the 1965 Amendment specifically protects this substantial governmental interest. We perceive no alternative means that would more precisely and narrowly assure the continuing availability of issued Selective Service certificates than a law which prohibits their wilful mutilation or destruction."

And finally it was said in *O'Brien* at page 382, 88 S.Ct. at page 1681, "When O'Brien deliberately rendered unavailable his registration certificate, he wilfully frustrated this governmental interest."

It is equally significant that the Supreme Court in *O'Brien* attached an appendix to its opinion, setting out portions of the reports of the Committees on Armed Services of the Senate and House explaining the 1965 Amendment. The following extracts from the reports appear in the appendix at page 387. The Senate report states:

> " 'The committee has taken notice of the defiant destruction and mutilation of draft cards by dissident persons who disapprove of national policy. If allowed to continue unchecked this contumacious conduct represents a potential threat to the exercise of the power to raise and support armies.' "

The House report states:

> " 'The House Committee on Armed Services is fully aware of, and shares in, the deep concern expressed throughout the Nation over the increasing incidences in which individuals and large groups of individuals openly defy and encourage others to defy the authority of their Government by destroying or mutilating their draft cards.' " U.S.Code Cong. & Admin.News 1965, p. 2889.

We do not think any significance can be attached to the fact that defendant here tore his registration card in two rather than burned it. The evidence is plain and uncontradicted that he wilfully mutilated his draft card. The statute does not require that the card be destroyed entirely or rendered unreadable. It proscribes the knowing destruction, mutilation or in any manner changing. As a matter of fact, defendant knowingly destroyed his card as tearing is the ordinary and customary manner of destroying paper items. Defendant himself considered that he destroyed the card as he thought it necessary to procure a new one and gave as reason therefor the destruction of the prior card. While most of the draft card destructions are by burning, we note that the Second Circuit in United States v. Dancis, 406 F.2d 729 (2nd Cir. 1969), cert. denied, 394 U.S. 1019, 89 S.Ct. 1640, 23 L.Ed.2d 44 (1969), upheld a conviction for mutilation of a draft card which was done by tearing the card into pieces.

██ It is next contended that by requesting a duplicate registration certificate defendant purged himself of the offense and that the action of the board in issuing a duplicate was a condonation of the offense. It is argued that Con-

gress intended to provide a *locus poenitentiae*. Such a doctrine is not applicable here for more than one reason. In the first place, the violation of the statute was a *fait accompli*. Defendant had committed a plain violation of the statute. *Locus poenitentiae*, if applicable at all, is applicable to situations where a violation is an intent and before any substantive crime is ever committed the defendant changes his mind about even intending to commit or participate in the commission of the crime. It is interesting to note that at the time of the commission of the crime and thereafter this defendant had no intention of requesting duplicate cards and only did so because of the grief and misery he had caused his family. In his letter to the draft board requesting a duplicate registration certificate, he stated:

> "With the greatest sadness and confusion that I have ever felt, I request a duplicate registration certificate and notice of classification, in accordance with section 1617.11 of the Selective Service regulations. As was reported on the news media, I ripped my cards in half and gave them to a plain-clothes policeman. *As I stated at that time, I expected the support of my family and had no intention of requesting duplicate cards.* I was shocked to discover that my family was made totally miserable and that they spent the next day weeping and accusing me of hurting them. I don't believe in inflicting that kind of suffering for uncertain and hypothetical results." (Emphasis supplied.)

■ Defendant has no more right to absolve himself of the crime he has committed than has any other law violator, as for example one guilty of larceny by making restitution. The local draft board, of course, has no authority to condone a criminal offense and, in fact, its issuance of the duplicate certificate does not constitute a condonation of defendant's act since 32 C.F.R. § 1617.11 requires it to issue a duplicate certificate whenever it is notified that the certificate previously issued has been destroyed. Defendant had requested a duplicate on this basis and the board had no option except to issue it.

■ It is argued that the government's failure to comply with the procedures of Local Board Memorandum 85 before prosecution was a failure of due process under the Fifth Amendment. That memorandum provided that the delinquency procedures were to be used before prosecution. These delinquency procedures have been declared void in Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), and Breen v. Selective Service Board, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), and consequently the memorandum is void. But even under the regulations, 32 C.F.R. § 1642.3, it is provided that compliance by a local board with the delinquency regulations was not a condition precedent to the prosecution of any person under § 12 of Title 1 of the Military Selective Service Act of 1967 (50 App., U.S.C. § 462).

■ Next, it is contended that defendant's conviction subsequent to the local board's declaration of his delinquency results in double punishment for the same offense and is in violation of defendant's rights under the Fifth and Sixth Amendments to the Constitution. We have heretofore pointed out that the underlying regulations authorizing induction are invalid. The local board could not have punished defendant under the invalid delinquency provisions, and, therefore, there could be no double jeopardy. The situation is analogous to one where a person is tried twice, the first court having no jurisdiction. In such cases, it has been held that a defendant has not been put in jeopardy twice. United States v. Ball, 163 U.S. 662, 669, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); Woodring v. United States, 337 F.2d 235 (9th Cir. 1964), cert. denied, 380 U.S. 933, 85 S.Ct. 937, 13 L.Ed.2d 820 (1965); United States v. Sabella, 272 F.2d 206 (2nd Cir. 1959). These cases effectively answer defendant's double jeopardy argument.

Defendant next argues that the sentence imposed constitutes cruel and unusual punishment in violation of his rights under the Eighth Amendment to the Constitution. This issue has heretofore been ruled on contrary to defendant's argument in Smith v. United States, 368 F.2d 529 (8th Cir. 1966).

Finally, it is contended that the court erred in overruling defendant's objection to the introduction of his selective service records into evidence. At the very outset of the trial defendant's counsel asked that defendant's selective service file be placed in evidence, and thereafter during the course of the board clerk's identification of the file and testimony that it was kept in the regular and usual course of business under her care and custody the government sought to have her examine its Exhibit No. 1. Defense counsel objected to the introduction of this exhibit until the entire file was placed into evidence for inspection by defendant. Thereafter, the court attempted to obtain a stipulation that would have shortened the trial, but failing in this gave the defense permission to inquire into the file which was elaborately taken advantage of. The crux of the matter is that the government was merely relying upon Exhibits 2 and 2A which were the two halves of defendant's registration certificate. It also introduced Exhibits 3 and 3A which were the two halves of defendant's notice of classification. Since defendant wanted the entire file introduced and the crucial exhibits were a part of the file, he is in no position to object to their admission. In any event, Exhibits 2 and 2A were necessary to show that the registration certificate was issued by the board and that defendant tore it in two. Hence it is proper evidence and insofar as the exhibits containing the classification notice are concerned it would not in any event, but particularly in a case tried to the court, constitute prejudicial error. See 7 Moore, Federal Practice ¶ 61.07[3], at 1022 (2nd ed. 1968).

The judgment of conviction is affirmed.