**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William George DUNBAR, M. D., Defendant-Appellant.**

No. 78–5037.

United States Court of Appeals, Fifth Circuit.

March 8, 1979.

---

(unindicted), to possess with intent to distribute approximately 4,000 Methaqualone tablets, also known as Quaaludes, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). Both defendants were convicted by a jury and Dr. Dunbar was sentenced to imprisonment for a term of five years, plus a two year parole term. Robinson did not appeal but Dr. Dunbar's appeal is now before us. We affirm the judgment of the District Court.

The evidence of Dr. Dunbar's guilt was overwhelming. Accordingly, he does not argue that the evidence was insufficient to support the conviction but presents ten other grounds for reversal. None of them, either individually or in combination with another, justify such a result, but for the benefit of the record they will be hereinafter discussed.

### 1.

Dr. Dunbar's argument that the indictment should have been dismissed on the ground that Congress did not designate Methaqualone as a Schedule II controlled substance, and that it could not constitutionally delegate power to the Executive to do so, must fail under our recent holding in *United States v. Gordon*, 5 Cir. 1978, 580 F.2d 827, 837–41.

### 2.

It is argued that the tape recording of a December 9, 1976, conversation between Dunbar and Agent Newman should not have been used because a proper foundation had not been laid and the recording was unduly prejudicial because other crimes or acts were discussed during the conversation. There was no error here. *See United States v. Biggins*, 5 Cir. 1977, 551 F.2d 64; *United States v. Jackson*, 5 Cir. 1978, 576 F.2d 46, 49; *United States v. Myers*, 5 Cir. 1977, 550 F.2d 1036, 1044–48; *United States v. Urdiales*, 5 Cir. 1975, 523 F.2d 1245, 1246–47, *cert. denied*, 426 U.S. 920, 96 S.Ct. 2625, 49 L.Ed.2d 373 (1975); *United States v. Bloom*, 5 Cir. 1976, 538 F.2d 704, 709.

Randall M. Clark, Brunswick, Ga., for defendant-appellant.

Wm. T. Moore, Jr., U. S. Atty., Augusta, Ga., Kathrine L. Henry, William H. McAbee, II, Asst. U. S. Attys., Savannah, Ga., for plaintiff-appellee.

Before WISDOM, COLEMAN and RONEY, Circuit Judges.

COLEMAN, Circuit Judge.

Dr. William George Dunbar and Clarence Eugene Robinson were indicted for conspiring, along with one Clarence Mack Walker

■ The admission of other evidence to show intent and plan, drug transactions involving Dunbar and which were not remote in time from the period in which the conspiracy was alleged to have existed, was not error.

### 3.

■ Next, Dr. Dunbar complains about the ruling of the district judge that Clarence Walker could invoke the attorney-client privilege and refuse to testify concerning conversations with his attorney about the consequences of pleading guilty to several offenses in the Florida state courts and then cooperating with the FBI in this case. Dunbar argues that under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), he was entitled to breach the attorney-client veil to show that Walker's testimony was tainted by a promise of leniency in return for that testimony. Walker himself eventually testified that it was his understanding that he would be rewarded for his testimony by a "five-year cap" on his sentence for the Florida offenses; he also stated that he had made no other deals. An FBI agent testified that Walker was aware of the fact that he, the agent, would inform the state district attorney of Walker's cooperation. Finally, a state district attorney testified that the sentencing judge would take into consideration Walker's testimony in the Dunbar case. With all of this testimony clearly indicating that Walker had an interest in the testimony he would give, the jury was informed that Walker's testimony might have been tainted by self interest. His credibility had been impeached clearly and convincingly, and we cannot see what further purpose could have been served by questions of a cumulative nature concerning conversations with his attorney.

### 4.

■ It is also argued that the motion for a directed verdict of acquittal should have been granted on the ground that the proof failed to conform to the indictment. Dunbar was charged with conspiracy to pos-

sess approximately four thousand Methaqualone tablets with intent to distribute. During the investigation, Agent Newman obtained a sample, which later turned out to be Diazepam, a Schedule IV drug. Even so, there was substantial evidence before the jury that Dunbar had in fact conspired to possess the four thousand Methaqualone tablets. The indictment alleged several overt acts, none of which involved possession of the sample tablet. Finally, where the agreement to accomplish an unlawful purpose is proven, receipt of a differing substance than that agreed to is not fatal to the conspiracy charge. *United States v. Murray,* 5 Cir. 1976, 527 F.2d 401, 411–12. Therefore, this argument is also without merit.

### 5.

■ Finally, Dunbar complains of the trial judge's instructions concerning the function of the appellate courts, unanimity of the verdict, and intent. When the jury had been impanelled, the judge in his initial instructions mentioned that if he made a mistake in the law, the appellate courts would very promptly correct it. Defense counsel immediately objected and moved for a mistrial. The judge overruled that motion, but promptly instructed the jury to disregard the reference to the appellate court. Although the objection was well taken, this isolated comment, considered in the context in which it was uttered and in light of the immediate curative instructions, did not justify a mistrial. *See, e. g., United States v. James,* 5 Cir. 1975, 510 F.2d 546, *cert. denied,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975).

### 6.

■ Similarly, there was no reversible error committed by the judge's charge that returning a "unanimous verdict would aid in the administration of justice". The entire charge [1] made plain to the jury that each member had a duty conscientiously to adhere to his own honest opinion. The charge did not create the impression that there was anything improper, questionable

---

1. Now, a word about your deliberations: As I say, I am going to send you out in a mo-

ment to deliberate upon your verdict. The first thing you do is, of course, select one of

or contrary to good conscience for a juror to disagree with his fellow jurors. *United States v. Bass*, 5 Cir. 1974, 490 F.2d 846, 854.

### 7.

■ Lastly, the trial court *did not* give a burden-shifting instruction on the issue of intent. In *United States v. Chiantese*, 5 Cir. 1977, 560 F.2d 1244, the *en banc* Court held that in all cases which commenced ninety days after the date of the opinion, "no district court in this circuit shall include in its charge to the jury an instruction on proof of intent which is couched in language which could reasonably be interpreted as shifting the burden to the accused to produce proof of innocence." 560 F.2d at 1255–56. Even though this case began within ninety days after the publication of *Chiantese*, the instruction given at trial[2] fully complied with the requirements of *Chiantese*. The trial judge did not charge the jury that it could "presume" intent, but rather that from the facts it could "infer" intent. This was not error.

AFFIRMED.

your number to be your foreperson to preside over your deliberations. And then I instruct you, moreover, that any verdict that you render must represent the considered judgment of each one of you. Of course, in order to be a legal verdict, it must be unanimous, that is, one that each and all of you agree to.

And in considering the case, bear in mind that your rendition and accomplishment of an impartial, unanimous verdict would aid in the administration of justice. But in deliberating, it is your duty to consult with each other and listen to each other. Each one of you, of course, must decide this case for yourself, but do it only after an impartial consideration and after discussing it with your fellow jurors; and in the course of your deliberations, if you find you differ with some of your fellow jurors, do not hesitate to reexamine your own views to see whether perhaps you have overlooked something or perhaps you should change your views. There is not any pride of authorship here. On the other hand, if you have a conscientious belief that you are right and that you should not change, do not change simply to arrive at a verdict or simply because others do not agree with you. But remember, you are judges. You are not partisans for either side here, and your only duty in this case is to render

an honest verdict as you see it regardless of where it falls, because when you have done that, you have done your duty first of all to yourself, but then certainly to these parties in this case and to this government.

2. You have just heard me use the word "intent." A person cannot be a conspirator unless he intends to be one, intends to be a part of a conspiracy. And intent is a matter which the government must prove; but intent is a characteristic which ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the mind of a person. You cannot cut a man's head open to see what his mind contains, but you may infer a defendant's intent from the surrounding circumstances. You may consider any statement made and done or omitted by a defendant and all other facts and circumstances in evidence which indicate his state of mind. You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted by him. As I have said, however, it is entirely up to you to decide what the facts are, defined from the evidence in this case.