**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William George DUNBAR, M.D.,
Defendant-Appellant.**

Nos. 78–1602, 78–5050.

United States Court of Appeals,
Fifth Circuit.

March 26, 1979.

Randall M. Clark, Brunswick, Ga., for defendant-appellant.

Wm. T. Moore, Jr., U. S. Atty., Katherine L. Henry, William H. McAbee, Asst. U. S. Attys., Savannah, Ga., for plaintiff-appellee.

Before WISDOM, COLEMAN and RONEY, Circuit Judges.

COLEMAN, Circuit Judge.

In *United States v. Dunbar*, 590 F.2d 1340, we affirmed the conviction of Dr. William George Dunbar on an indictment charging a *conspiracy* to possess Methaqualone with intent to distribute. In that case, the jury verdict of guilty was returned on December 22, 1977. Notice of appeal was filed the next day. Dunbar, however, was not sentenced until January 19, 1978, necessitating the filing of an amended notice of appeal.

In another indictment, the grand jury had charged Dr. Dunbar with five counts of distributing Schedule II controlled substances by means of prescriptions not in the usual course of professional practice for a legitimate medical purpose, 21 U.S.C. § 841(a)(1).

On December 27, 1977, five days after his conviction in the conspiracy case (No. 78–5037), Dr. Dunbar pleaded that conviction as double jeopardy, barring prosecution on the pending indictment, arguing that the same evidence used to convict him in the conspiracy trial would be used against him in the trial for the substantive offenses. On December 30, Dunbar filed papers evidencing his desire to appeal the "overruling of his former jeopardy plea", although the record contains no written order evidencing that this unfavorable action had been taken.

Trial on the possession indictment was set for January 3. At 8:30 that morning, Dunbar filed a "plea in bar" asserting that the government was "collaterally estopped" in the forthcoming trial from using the evidence which had been used in the previous trial on the conspiracy indictment. At 9:00 the trial judge denied that motion. At the same time he issued a detailed order which overruled the plea of former jeopardy and disposed of various other defense motions. Dunbar immediately filed a notice of appeal from this denial of his prior jeopardy plea. Instead of halting the trial so that Dunbar could pursue his appeal on the double jeopardy issue, *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the trial judge thought that the motion was "without merit" and began the trial at 11:35 o'clock.[1] The trial ended the next day with a jury verdict of guilty on all five counts.

Dunbar had not sought a writ of mandamus or prohibition in an effort to halt the

---

1. The record as originally filed did not indicate that Dunbar's counsel personally reminded the trial judge of his desire to appeal the ruling on the double jeopardy motion. On September 5, 1978, however, this Court received a supplement to the record which clearly indicates that Dunbar's counsel and the judge discussed the matter of the appeal. Thus, the judge did not proceed to trial without knowledge that a notice of appeal had been filed.

trial. In fact, on March 3 Dr. Dunbar's appeal on the double jeopardy issue was dismissed for failure to docket. He then moved to reinstate it, and that motion was granted by a judge of this Court. That reinstated appeal was docketed as No. 78–1602. The subsequent appeal from the judgment of conviction was docketed as No. 78–5050.

## NO. 78–1602, THE APPEAL ON THE PRIOR JEOPARDY ISSUE

A dominant factor in this interlocking procedural situation is that there can be no doubt, absolutely no doubt, that Dunbar's double jeopardy plea was totally devoid of merit. As far as we are aware, no court in this country has ever held that a defendant may not be indicted and tried once for a conspiracy and thereafter tried for the crime of distributing controlled substances, especially where, as here, the drug named in the conspiracy count is not the same as the drugs specified in the substantive counts. *But cf. Abbate v. United States*, 359 U.S. 187, 196–201, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) (Brennan, J., concurring). A conspiracy to commit a crime and the crime itself are separate offenses and a defendant may be tried in separate trials for these offenses. *E. g., Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Ballard*, 5 Cir. 1978, 586 F.2d 1060, 1064–66; *King v. United States*, 5 Cir. 1978, 565 F.2d 356; *Curtis v. United States*, 5 Cir. 1977, 546 F.2d 1188, *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977). A defendant is not placed in double jeopardy when the same witnesses testify in the second trial and much of the same evidence is introduced. *E. g., Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *King v. United States*, 5 Cir. 1978, 565 F.2d 356.

In *United States v. Smith*, 5 Cir. 1978, 574 F.2d 308, we dealt with a claim nearly identical to that raised by Dr. Dunbar. There we stated:

The double jeopardy clause provides three related protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Appellant seeks to invoke the second of these protections. In support of his double jeopardy claim, appellant notes that of the 74 overt acts alleged in this indictment, 5 relate to attempts to bribe or enlist the aid of state officials in obtaining marijuana. Since these acts had also been alleged to support his earlier marijuana conspiracy conviction, appellant argues that the present prosecution is for the "same offense" charged in his previous marijuana trial.

The classic test for determining whether two offenses are "the same" for double jeopardy purposes was announced in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Blockburger* requires that each offense be examined to ascertain "whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182; *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Jeffers v. United States*, 432 U.S. 137, 151, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). Under the *Blockburger* test, also known as the "same evidence" rule, it is possible for a single criminal act or conspiracy to give rise to multiple separate offenses. *See Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958) (defendant convicted and received consecutive prison terms for three separate offenses arising out of single narcotics sale); *United States v. Houltin*, 525 F.2d 943 (5th Cir. 1976) (single conspiratorial agreement violated two specific conspiracy statutes; defendant's consecutive sentences affirmed), *vacated on other grounds sub nom. Croucher v. United*

*States,* 429 U.S. 1034, 97 S.Ct. 725, 50 L.Ed.2d 745 (1977). Application of the test focuses on the statutory elements of the offenses charged. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294, 43 L.Ed.2d 616 (1975). A cursory examination of the offenses involved here reveals that they are not the same.
574 F.2d at 309–10.

We have also dealt with the collateral estoppel component of the double jeopardy clause, which, by Dunbar's citations of authority, is apparently the precise argument that he advances. In *Hardwick v. Doolittle,* 5 Cir. 1977, 558 F.2d 292, we stated:

A second prosecution for the "same offense" also occurs when the state attempts to relitigate issues of fact necessarily determined in a defendant's favor at a prior trial. *Ashe v. Swenson,* 397 U.S. 436, 443–45, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The collateral estoppel component of the double jeopardy clause, *id.* at 445, 90 S.Ct. 1189, therefore prohibits the state from relitigating an issue against a particular defendant unless "taking into account the pleadings, evidence, charge, and other relevant matter, . . . a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration," *id.* at 444, 90 S.Ct. at 1194 (citation omitted); *see Turner v. Arkansas,* 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972). In the instant case, however, no factfindings favorable to appellant were necessarily part of the first jury's verdict: he was convicted on both counts of the original indictment. In retrying him on those counts, the state did not seek to deny him the benefit of a previous favorable verdict. And because the two other counts of the second indictment were additional charges, appellant cannot claim that the first jury implicitly acquitted him of those charges. *Cf. Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (jury returned no verdict on greater offense, but convicted on lesser included offense; *held,* defendant may not be retried for greater offense after conviction is overturned, the jury having implicitly acquitted him of that greater offense). Finally, since the double jeopardy clause does not require the state to join in a single proceeding all charges arising from one criminal episode or transaction, compare *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), *with id.* at 448–460, 90 S.Ct. 1189 (Brennan, J., concurring), the fact that the state did not try appellant on all four counts at the first trial does not by itself show that appellant was twice put in jeopardy.
558 F.2d at 298.

Thus, Dunbar's double jeopardy plea had no merit. Indeed, it was both frivolous and dilatory.

The Judgment of the District Court overruling the pleas of double jeopardy and collateral estoppel is Affirmed.

## NO. 78–5050, THE APPEAL FROM THE CONVICTION ON THE SUBSTANTIVE OFFENSES

This disposition of the former jeopardy plea does not settle the appeal from the conviction entered while the former jeopardy appeal was still pending.

We must deal with the fact that the pretrial order denying the motion to dismiss the indictment on double jeopardy grounds was a final decision within the meaning of 28 U.S.C. § 1291 and therefore immediately appealable, *Abney v. United States, supra.* Since *Abney,* we have entertained appeals from such pretrial orders, *e. g., United States v. Smith,* 5 Cir. 1978, 574 F.2d 308; *United States v. Evers,* 5 Cir. 1978, 569 F.2d 876; *United States v. Crouch,* 5 Cir. 1978, 566 F.2d 1311. In none of those cases, however, was it necessary to decide what is to be done when the district judge proceeds to trial in spite of the fact that the defendant has filed a notice of appeal from the

pre-trial order denying the double jeopardy motion. It would appear that now we must decide that question.

■ The events in this case took place after *Abney.* Everybody knew that a pre-trial order denying a motion to dismiss on double jeopardy grounds was appealable. The crucial issue is whether the timely filing of the notice of appeal stripped the District Court of its jurisdiction to try the case on the merits pending the outcome of the prior jeopardy appeal.

*Abney* provides a strong indication that this question must be answered in the affirmative. The unanimous opinion for the *Abney* Court placed great emphasis on the importance of not postponing appellate review of double jeopardy claims until after conviction and sentence. "[I]f a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." 431 U.S. at 662, 97 S.Ct. at 2042. There is no indication that the Court contemplated that the district courts could continue to plow forward after a notice of appeal had been timely filed before trial commenced. In fact, the Court explicitly noted that its "holding may encourage some defendants to engage in dilatory appeals . . . ." 431 U.S. at 662 n. 8, 97 S.Ct. at 2042. However, the Court felt that such appeals could, and should, be dealt with at the appellate level through the use of summary procedures. *Id.*

In *United States v. Hitchmon,* 5 Cir. 1979, 587 F.2d 1357, a criminal prosecution of course, the trial court granted a motion for a new trial on grounds of newly discovered evidence, and the government appealed that ruling. Nevertheless, the second trial began a few days later, and the defendants were again convicted. We held that the timely filing of the notice of appeal ousted the trial court of jurisdiction to hold the second trial while the appeal was pending.

What we have here is not a *Hitchmon* case. Under *Abney,* Dunbar had a right to appeal the denial of his plea of former jeopardy. His notice of appeal was timely, it was filed before the trial commenced, and it was neither clearly nor manifestly deficient.

The Judgment of conviction in No. 78–5050 is vacated.

## THE FUTURE COURSE OF THIS LITIGATION

When Dunbar filed his timely notice of appeal from the order overruling his double jeopardy plea on January 3, 1978, that notice automatically divested the District Court of jurisdiction over the case. Having been so ousted of jurisdiction, it lacked power to try and convict Dunbar. The judgment of conviction was therefore null and void. Because the Court lacked jurisdiction, Dunbar will not be subjected to double jeopardy if the government decides to reprosecute. *Serfass v. United States,* 420 U.S. 377, 391, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265, 276 (1975); *Kepner v. United States,* 195 U.S. 100, 129, 24 S.Ct. 797, 49 L.Ed. 114 (1904); *United States v. Ball,* 163 U.S. 662, 669, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); *United States v. Sabella,* 2 Cir. 1959, 272 F.2d 206, 208–210; *Moore v. Foti,* 5 Cir. 1977, 546 F.2d 67; *Wolkoff v. United States,* 6 Cir. 1936, 84 F.2d 17; *United States v. Weissman,* 8 Cir. 1970, 434 F.2d 175, 179; *Woodring v. United States,* 9 Cir. 1964, 337 F.2d 235, *cert. denied,* 380 U.S. 933, 85 S.Ct. 937, 13 L.Ed.2d 820 (1965); *Johnsen v. United States,* 9 Cir. 1930, 41 F.2d 44, *cert. denied,* 282 U.S. 864, 51 S.Ct. 37, 75 L.Ed. 764 (1930).

It necessarily follows that no future pleas of double jeopardy or collateral estoppel are to be entertained in this case and no future trial on the merits as to the indictment for possession with intent to distribute is to be delayed by another double jeopardy plea.

## CONCLUSION

The Judgment in No. 78–1602 is AFFIRMED.

The Judgment in No. 78–5050 is VACATED and the case is REMANDED.

RONEY, Circuit Judge, concurring:

I concur under the law as it now appears to have been solidified in *United States v. Hitchmon*, 587 F.2d 1357 (5th Cir. 1979). The result is questionable. As Judge Coleman has set forth, the double jeopardy plea had no merit and was both frivolous and dilatory. The district court, correctly discerning this, put the defendant to the trial scheduled long prior to the double jeopardy motion or notice of appeal. The defendant has been proven guilty of the crimes charged in an errorless trial by the very court that should try him.

In *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), it was decided that a defendant can get a review of his double jeopardy plea before being put in jeopardy in a second trial. But the defendant here has already suffered all the consequences that *Abney* sought to avoid. He has been through a "second" trial before review of the double jeopardy claim. Now, in the name of *Abney*, he goes through those consequences yet again. And everyone else goes with him, the Government resources, the court, court personnel, and the witnesses, who may be the most unnecessarily imposed upon of the cast of characters because of these legal machinations. I think the Court could work out a rule that would properly balance the interests *Abney* seeks to protect against the interest of the judicial system in being efficient, nondilatory, and reflective of practical common sense. If the law of the circuit did not previously foreclose such a decision by this panel, however, *Hitchmon* does. I therefore concur in the decision of the Court.