758 F.2d 654
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
JAMES WESLEY GUSTUS, DEFENDANT-APPELLANT.
 NO. 84-5631
 United States Court of Appeals, Sixth Circuit.
 2/6/85
 
 Appeal from the United States District Court for the Eastern District of Tennessee, Southern Division
 Before: KENNEDY, MARTIN and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Gustus appeals from his conviction on six counts of an eight count indictment charging him with violating 26 U.S.C. Sec. 7206(2), which makes it a felony for anyone 'willfully' to assist in the preparation of a tax return 'which is fraudulent or is false as to any material matter.' He contends that the evidence below was insufficient to support a finding of 'willfulness' on his part; and that, with respect to four of the counts on which he was indicted, the government failed to prove beyond a reasonable doubt that the returns in question were false.
 
 
 2
 Each count charged Gustus with having willfully taken deductions, specifically charitable contributions to the Universal Life Church, in preparing taxpayers' returns, to which he knew that the taxpayers were not entitled. In each case, although he did not sign the taxpayer's return as preparer, he gave the taxpayer a receipt for the 'contribution,' which he signed 'Reverend James Gustus.' He contends that in taking these deductions, he did not intend to violate the law and did not believe that he was doing so. He claims that, although the Universal Life Church blatantly advertised itself as the 'divine tax dodge,' it was accorded tax exempt status by the IRS; that he was simply following a manual prepared by the church on tax preparation; and that, according to the manual, enrolling the taxpayers in question as 'ministers' of the church entitled them to deduct up to 50% of their gross income as a charitable contribution in the form of church-related expenses.
 
 
 3
 Although Gustus apparently had each taxpayer sign an application to become a Universal Life Church minister, each of the taxpayers testified that he or she was unaware that Gustus was a 'minister' and that taking the charitable deduction was his idea; each denied having made the charitable contribution claimed or representing to Gustus that it had been made; and each testified that he or she did not regard him or herself as having become a member of the church, and that Gustus had not discussed religion with them, the basis for the charitable deduction being claimed, or the necessity to record their 'church related expenses.' Gustus testified that the tax preparation manual, which he claims to have followed, instructed ministers that they could not counsel taxpayers on deduction of household expenses as contributions to the church until taxpayers were enrolled as ministers; that he enrolled the taxpayers and instructed them on the importance of maintaining financial records of their expenses; that each taxpayer represented to him that the charitable contribution being deducted actually had been made; and that according to the manual it was not his responsibility but that of the Universal Life Church office in Modesto, California, to verify the legitimacy of the taxpayers' claims.
 
 
 4
 The critical element in a tax fraud case is the defendant's state of mind. See United States v. Sternstein, 596 F.2d 528, 530 (2d Cir. 1979). To satisfy the willfulness requirement of Sec. 7206(2), the government had to prove that Gustus knew that the deductions in question were not legitimate, and that in taking them he intended to violate the law. Direct evidence is rarely available of a person's state of mind. It is well established that the requisite intent under Sec. 7206(2) 'may be shown from the surrounding facts and circumstances. No direct proof of intent is necessary.' United States v. Barnes, 313 F.3d 325, 327 (6th Cir. 1963); see United States v. Lattus, 512 F.2d 352, 353 (6th Cir. 1975); United States v. Null, 415 F.2d 1178, 1181 (4th Cir. 1969).
 
 
 5
 There was abundant evidence from which the jury could infer that the appellant knowingly and willfully prepared false tax returns. Although he signed the receipts for the charitable contributions, he did not sign the returns as preparer, and he received payment for preparing taxpayers' returns in cash and did not give them a receipt. Moreover, his preparation fee was payable after receipt of taxpayer's refund, in several instances as a percentage of that refund. Hence, appellant stood to gain by inflating the size of the contribution being claimed as a deduction. See Barnes, 313 F.2d at 325 (defendant had purchased 'right' to refunds and had interest in inflating them); see also Sternstein, 596 F.2d at 529-30 (defendant argued that he charged flat fee not contingent on refund, but government argued that his interest was in building a tax preparation business by developing a base of satisfied customers that received large refunds). Certainly the circumstances were such 'that the question of the defendant's subjective state of mind was properly left to the jury for resolution.' Null, 415 F.2d at 1181.
 
 
 6
 Even if it were accepted that appellant reasonably believed that if he followed the Universal Life Church manual, the kind of deductions here at issue would be legal, the jury could have found based on the conflicting testimony of Gustus and the taxpayers that he willfully and knowingly prepared false returns. On the basis of the conflicts between the taxpayers' and appellant's testimony, the jury could have found that Gustus deliberately circumvented what he knew from the manual to be steps necessary to legitimize the 'divine tax dodge.' The jury also could have found the Gustus knew that the taxpayers were not eligible for a charitable deduction for expenses incurred prior to their becoming ministers, which would have to have been the case in this instance if the taxpayers did not make outright cash donations to the church.
 
 
 7
 Appellant's second claim of error is that with respect to four counts of the indictment, the district judge should have directed a verdict in his favor at the close of the government's case because it had failed to prove beyond a reasonable doubt that the returns in question were false. Those returns were filed by joint taxpayers. In each case the government called as witnesses only the taxpayer to whom the receipt documenting the charitable contribution being deducted was issued. Gustus contends that since the other party to the joint return conceivably could have made the contribution, the government, in effect as a matter of law, failed to carry its burden of proof.
 
 
 8
 'Beyond a reasonable doubt does not mean a mathematical certainty,' Jennings v. United States, 350 F.2d 949, 949 (9th Cir. 1965), or 'inescapably,' Woodring v. United States, 337 F.2d 235, 237 (9th Cir. 1964). While theoretically the possibility existed that the non-testifying joint taxpayer had made the contribution in question without the knowledge of the testifying taxpayer, it was certainly permissible to submit the case to the jury on the evidence presented.
 
 
 9
 Appellant's conviction is affirmed.