Albert **GUSIKOFF** and Paul Rosen, Plaintiffs-Appellants,

v.

**UNITED STATES** of America, Respondent-Appellee.

No. 79–3500.

United States Court of Appeals, Fifth Circuit.

June 6, 1980.

John H. Lipinski, North Miami, Fla., Jeffrey M. Hagen, Coral Gables, Fla., for plaintiffs-appellants.

Jack V. Eskenazi, U. S. Atty., Linda L. Carroll, Linda Collins-Hertz, Asst. U. S. Attys., Miami, Fla., for respondent-appellee.

Before RUBIN and POLITZ, Circuit Judges, and SMITH *, District Judge.

ORMA R. SMITH, Senior District Judge:

Albert Gusikoff, also known as Alan Graham, ("Gusikoff") and Paul Rosen ("Rosen"), appeal from an order of the United States District Court, Southern District of Florida, denying their joint petition for writ of Habeas Corpus. We affirm.

A complaint was filed in the United States District Court, Southern District of Florida, on April 13, 1979, seeking to obtain the extradition of Gusikoff to the United Kingdom pursuant to Article III of the Treaty on Extradition between the United States of America and the United Kingdom of Great Britain and Northern Ireland.[1]

---

* District Judge of the Northern District of Mississippi, sitting by designation.

1. Article III provides in pertinent part:
   (1) Extradition shall be granted for an act or omission the facts of which disclose an offense within any of the descriptions listed in the Schedule annexed to this Treaty, which is an integral part of the Treaty, or any other offense, if:

(a) the offense is punishable under the laws of both Parties by imprisonment or other form of detention for more than one year or by the death penalty;

. . . . .

(c) the offense constitutes a felony under the law of the United States of America.
Note: The schedule annexed to the treaty includes "Schedule List of Offenses referred to in Article III. 17. Obtaining property, money

This Treaty was entered into force January 21, 1977. A similar complaint was filed against Rosen.

The complaints were referred to United States Magistrate Patricia Jean Kyle. Upon an extradition hearing held pursuant to 18 U.S.C. § 3184[2] and the terms of the Treaty aforesaid, Magistrate Kyle found Gusikoff and Rosen extraditable to the United Kingdom.

The magistrate, on October 15, 1979, committed Gusikoff and Rosen to the custody of the United States Marshal and entered a Certificate of Extraditability and Order of Commitment. The magistrate directed that the certificate and order, together with a copy of all the testimony presented in the case, and the formal extradition papers be forwarded to the Secretary of State.

A magistrate's decision on extraditability is not itself appealable. Gusikoff and Rosen immediately after the issuance of the magistrate's Certificate of Extraditability and Order of Commitment filed a joint application for a Writ of Habeas Corpus. A hearing on the petition was held on October 17, 1979. On October 19, 1979, District Judge James W. Kehoe orally denied the petition, and a written order was entered on October 22, 1979. This appeal followed.

It is well recognized that our review of the findings of the district court is extremely limited. Chief Judge Coleman, speaking for the court in *Garcia-Guillern v. United States*, 450 F.2d 1189 (5th Cir. 1971), stated the rule to be

Habeas corpus review of the findings of a court which conducted an extradition hearing is extremely limited. Under existing law, such review includes only (1) whether the magistrate had jurisdiction, (2) whether the evidence showed a reasonable ground to believe the accused guilty, and (3) whether the offense charged was within the treaty.

450 F.2d at 1191.

In the petition for a Writ of Habeas Corpus, Gusikoff and Rosen did not challenge the jurisdiction of the magistrate nor did they claim that the offenses for which their extradition was sought were not covered by the Treaty. It is, therefore, unnecessary for us to consider whether the magistrate had jurisdiction, or whether the offenses charged are within the Treaty. Our sole concern is whether the evidence supports a reasonable ground to believe Gusikoff and/or Rosen guilty. *Garcia-Guillern v. United States, supra.* In considering this question Gusikoff and Rosen contend the issues are:

1. Whether the lower court erred in finding that the evidence presented by the respondent was sufficient to prove probable cause?

2. Whether the lower court erred in finding that the evidence present[ed] by the respondent was sufficient to identify the petitioners as the persons demanded by Great Britain?

3. Whether the lower court erred in finding that the petitioners' extradition was not barred by their previous conviction and punishment?

or valuable securities by false pretense or other form of deception".

**2.** 18 U.S.C. § 3184 provides:

Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may

be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

### Did Probable Cause Exist?

■ The United Kingdom charges that Gusikoff and Rosen committed crimes of obtaining property or money by false pretenses contrary to Section 15(1) of the Theft Act of 1968 through the operation in the United Kingdom, during the period June 21, 1973, through September, 1975, of a British Company, Rings Unlimited, Ltd. ("Rings"). Rings had been organized in the United Kingdom on February 26, 1973, and Gusikoff and Rosen purchased the company on June 21, 1973.

The United Kingdom charged that Rings advertised and sold franchises to individuals for the retail sale of jewelry; that as a part of its advertising campaign and the terms of its operation or franchise plan Rings falsely represented, among other things, that it had an extensive research and marketing staff as well as a staff to render assistance to franchise holders which was skilled in selecting, arranging, and planning the franchisee's actual site operation; and that the company utilized documents entitled "profile profits" which purported to show profits accruing to distributors. The United Kingdom alleged 15 separate violations of the Theft Act of 1968.

At the hearing before Magistrate Kyle, the United States introduced into evidence a certified copy of the Treaty and Diplomatic Notes, and documentary evidence supporting extradition, consisting of two volumes, containing sworn statements of 15 persons, each of whom had entered into franchise agreements with Rings; also, sworn statements by persons employed by Gusikoff and Rosen, detailing the activities of Rings and its actual size and experience of its staff.

In conducting the hearing, Magistrate Kyle used the standard established by 18 U.S.C. § 3190.[3]

In determining whether probable cause exists, we follow well established judicial precedents. In *Garcia-Guillern v. United States, supra,* at 1192, the court stated:

> The function on habeas corpus is to determine whether there is any competent evidence tending to show probable cause. The weight and sufficiency of that evidence is for the determination of the committing court.

In *Sayne v. Shipley,* 418 F.2d 679, 685 (5th Cir. 1969), the court said:

> Hearings held pursuant to Section 3184 are in the nature of a preliminary hearing. (Citation omitted.) The foreign country does not have to show actual guilt, only probable cause that the fugitive is guilty. (Citations omitted.) The magistrate does not inquire into the guilt or innocence of the accused; he looks only to see if there is evidence sufficient to show reasonable ground to believe the accused guilty. (Citation omitted.) The magistrate also determines whether the offense charged is extraditable and whether the person brought before him is the one accused of crime.

At the hearing before the magistrate, the two volumes of documents were introduced. They contained, as above indicated, the sworn statements of 15 individuals, each of whom entered into franchise agreements with Rings, as well as sworn statements of individuals employed in the Rings operation by Gusikoff and Rosen and numerous exhibits.

As for identification, an issue raised by Gusikoff and Rosen, there are photographs contained in these documents which a witness identified under oath, as being photographs of the owners and operators of Rings, who were then known to the affiant as Alan Graham and Paul Robins. The

---

**3.** 18 U.S.C. § 3190, provides:

Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

magistrate held that the photographs in evidence identified Albert Gusikoff and Paul Rosen and were photographs of the individuals appearing before her at the hearing. The district judge had this testimonial and documentary evidence before him in the habeas corpus proceedings. At the hearing below, Gusikoff and Rosen conceded that they were the persons shown in the photographs which had been admitted in evidence. To complete the identification problem, Mr. Robert Walker, an employee of Rings in the United Kingdom and an individual who had contact with "Alan Graham" and Rosen, also known as "Paul Robbins", identified each photograph.

We hold that the evidence introduced at the hearing was sufficient to justify the holding of the magistrate that probable cause existed to believe that Gusikoff and Rosen committed the crimes in the United Kingdom with which they were charged.

Article V(1)(a) of the Treaty provides in pertinent part:

(1) Extradition shall not be granted if:

(a) the person sought would, if proceeded against in the territory of the requested Party for the offense for which his extradition is requested, be entitled to be discharged on the grounds of a previous acquittal or conviction in the territory of the requesting or requested Party or of a third State; or . . .

Petitioners contend that this "double jeopardy" provision precludes their extradition in this case.

The record indicates that in March, 1975, an Information was filed in the United States District Court for the Eastern District of New York, charging these same petitioners with violations of 18 U.S.C.

§ 371, which makes it unlawful "[to] conspire either to commit any offense against the United States, or to defraud the United States, . . . ." The conspiracy with which the petitioners were charged was that of violating the mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343.[4] It was charged, as part of the conspiracy, that between January 1, 1972, and July 30, 1973, the petitioners organized a program to sell distributorships in their costume jewelry business, and mailed to prospective distributors certain promotional literature which contained false and fraudulent statements. All of the overt acts alleged to be part of the conspiracy took place in the United States. The petitioners subsequently pled guilty to the information, and were sentenced to two years imprisonment, pursuant to 18 U.S.C. § 3651.[5]

■ In the extradition proceeding in the court below, the United Kingdom charged that the petitioners violated the Theft Act of 1968 in the operation of Rings from June 21, 1973, through September, 1975. The petitioners contend that their conviction in New York activates Article V(1)(a) of the Treaty, and bars their extradition. In order for that provision to come into effect, however, it must be shown that the petitioners would be entitled to be discharged "if proceeded against in the territory of the requested Party for the offense for which . . . extradition is requested." It is clear from this language that "the charges upon which a fugitive has been 'punished' in the United States . . . must cover the same acts as those which are the subject of the extradition request . . . ." *Stowe v. Devoy*, 588 F.2d 336, 340 (2d Cir. 1978).

---

4. 18 U.S.C. § 1341 provides in pertinent part: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for *obtaining money or property by means of false or fraudulent pretenses, representations, or promises,* . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office . . . any matter or thing whatever to be sent or delivered by the Postal Service, . .

shall be fined not more than $1,000 or imprisoned not more than five years, or both. 18 U.S.C. § 1343 prohibits the use of wire, radio, or television in interstate commerce to obtain money or property by false pretenses.

5. Each of the petitioners was directed to serve *four months of the sentence in a correctional institution;* the remainder of the sentence was suspended and the petitioners were placed on probation.

■ In this action the record is clear that the acts for which the petitioners were convicted and punished in New York were committed in New York, between January, 1972, and July, 1973. The corporation which was a part of the conspiracy was a New York corporation. The record is also clear that the offenses alleged in the extradition request occurred in Great Britain during 1974 and 1975, and that the company involved was a British corporation. It is evident, therefore, that the acts which are the subject of the extradition request are not the same as those covered by the previous conviction. The Double Jeopardy Clause certainly did not require prosecution for all of these acts at the same time, since they did not "grow out of a single criminal act, occurrence, episode, or transaction." *Ashe v. Swenson*, 397 U.S. 436, 453–54, 25 L.Ed.2d 469, 481 (1970) (Brennan, J., concurring).[6] The double jeopardy provision of the Treaty is not, therefore, activated by the facts in this case.

■ Moreover, as this court has previously stated, "no court in this country has ever held that a defendant may not be indicted and tried once for a conspiracy and thereafter tried for the [substantive] crime . . . ." *United States v. Dunbar*, 591 F.2d 1190, 1192 (5th Cir. 1979). The conspiracy to commit a crime and the crime itself are separate offenses. *See also, Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

For the reasons given herein, the trial court's order denying the petition for Writ of Habeas Corpus is

AFFIRMED.

---

6.   Another reason why the Double Jeopardy Clause would not apply is that "no single court [has] jurisdiction of all the alleged crimes." 397 U.S. at 453 n. 7, 90 S.Ct. at 1199 n. 7, 25 L.Ed.2d at 481 n. 7. *See also, Sindona v. Grant*, 619 F.2d 167, 178 n. 13 (2d Cir., 1980).