# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 7, 2012

Lyle W. Cayce
Clerk

No. 11-10979

TANCI ISSA BALZAN,

Petitioner - Appellant

v.

UNITED STATES OF AMERICA,

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, CLEMENT, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

An extradition treaty between the United States and Argentina contains a so-called "dual criminality" clause. That clause makes an offense extraditable if it could be punished, under the laws of both countries, with over a year of imprisonment.[1] A magistrate certified that petitioner Balzan could be extradited to Argentina to stand trial for fraud. Balzan contends that his alleged fraud is

---

[1] *See* Extradition Treaty Between the United States of America and the Argentine Republic Art. 2, U.S.-Arg., June 10, 1997, S. Treaty Doc. No. 105-18, *available at* http://www.state.gov/documents/organization/101677.pdf ("An offense shall be an extraditable offense if it is punishable under the laws in both Parties by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.").

not an extraditable offense; he argues that because the government did not establish the value of the goods he obtained, his possible jail term under domestic law cannot exceed one year. We disagree, and AFFIRM the district court's denial of his habeas petition.

# I

In March 2010, the Embassy of Argentina requested that Tanci Issa Balzan be extradited from the United States. Argentina accuses Balzan of swindling a fashion designer out of several clothing samples and designs, in violation of Article 172 of the Argentinean Criminal Code. Authenticated papers included with Argentina's request for extradition allege that:

> Rubén Gonzalez . . . said he . . . met "James Balzan" at a fashion show at the Pestana Hotel [in Buenos Aires, Argentina], where [Balzan] gave [Gonzalez's] secretary a business card with the trade mark "Gucci[."] [Balzan] told the secretary he was following Gonzale[z's] career and wanted to do business with [Gonzalez]. After a couple of days [Balzan] called, [and] they met at a bar. There were more meetings at the same bar or at Gonzalez['s] attellier. The piece of business offered by [Balzan] was the purchase of 49% of [Gonzalez's] trade mark by "Gucci" and at the same time the possibility to make a fashion show. . . . On the 22nd day of December 2006, the defendant was at Gonzalez['s] attellier and took four dresses, four bags, two leather jackets, one shirt and ten folders with sketches of designs. Those good[s] would be delivered by Balzan to an investor, who would later make a deposit of money in advance that would round up US$ 50[,]000. From then on [Balzan] disappeared and Gonzalez had no news of his goods or the money to be deposited.

The documents elsewhere describe the clothing samples obtained, including a "long [party dress] . . . with golden embroidery at the skirt hem and in the front part from the bust to the waist;" a "clutch bag . . . with appliqué of flowers and black crystals;" and a "clutch bag . . . with appliqué of crystals all along."[2] The

---

[2] The full description of the clothing is as follows: (a) "long party dress, till the feet, bright iridescent, from grey to copper, naked shoulders and long neck;" (b) "long party dress,

documents noted that each of the ten folders contained approximately fifteen sketches, and that each sketch "had the name 'Ruben Oscar Gonzalez' in small letters and the drawing of a red orchid in between."

In October 2010, the United States filed a complaint under 18 U.S.C. § 3184, asking a federal district court to certify Balzan as extraditable. The complaint alleged that the conduct of which Balzan was accused is punishable by over one year of imprisonment in both the United States and Argentina. After an extradition hearing, a magistrate judge found that documents Argentina submitted in support of extradition were properly certified and authenticated, in accordance with the treaty and 18 U.S.C. § 3190. Based in part on those documents, the magistrate certified Balzan as extraditable.

Balzan petitioned for a writ of habeas corpus.[3] He argued that the conduct charged in Argentina does not give rise to an extraditable offense because that conduct would not be punishable in the United States with more than one year's imprisonment.[4] Balzan noted that the only domestic law considered in the extradition hearing was Texas state law,[5] under which the maximum

---

till the feet, black color, with a little back tail, embroidery in the upper part with the same color, naked shoulders and neck;" (c) "long party dress, till the feet, black color, embroidery in silver color, naked shoulders and neck, with hemstitching at the height of the waist;" (d) "long dress party, beige color, with golden embroidery at the skirt hem and in front part from the bust to the waist;" (e) "clutch bag, black color, with appliqué of flowers and black crystals;" (f) "small handbag bright copper brown with a big flower in the front and a crystal in the middle of the flower;" (g) "clutch bag, camel color with appliqué of crystals all along;" (h) "clutch bag, camel color with appliqué of flowers of Italian lace of the same color;" (I) "two black leather jackets, front zip, pockets at the side, and the seams sewed with white thread, one of the jackets had shirt-like neck with white color satin lining, the other jacket had Mao-like neck with red satin lining;" and (j) "long sleeve shirt, ordinary shirt neck, white background with stripes, nacre color buttons."

[3] A person certified as extraditable may not appeal from a magistrate's certification decision, but may seek habeas corpus relief. *See In re U.S.*, 713 F.2d 105, 108 (5th Cir. 1983).

[4] Balzan conceded in his habeas petition that the maximum punishment for a violation of Article 172 of the Argentinean Criminal Code "exceeds one year."

[5] A dual criminality clause may be satisfied by a violation of state law. *See Wright v. Henkel*, 190 U.S. 40, 58–62 (1903).

punishment for theft varies based on the value of the property obtained. Balzan argued that the government failed to produce "evidence of *any* value[,] much less the [$1,500] value sufficient to trigger the Treaty's provisions under Texas law," and moved for his release from custody.

A different magistrate judge disagreed. She recommended that the district court deny Balzan's habeas petition because the certified papers supported extradition. Balzan objected on two grounds. He first contended that the investor's promised $50,000 investment provides *no* evidence of the value of the items that Balzan took; a sample of thumbtacks given to an investor, for example, would not be worth $50,000 merely because that was the amount of investment proposed. Second, Balzan argued that certification could not depend on the authenticated documents he described as "Argentinian pleadings," contending that pleadings "'are not evidence of the facts alleged therein.'" The district court nevertheless adopted the magistrate's report and denied Balzan's petition.

## II

Habeas corpus review of a magistrate's certification order is "quite narrow."[6] We may inquire only "[1] whether the magistrate had jurisdiction, [2] whether the offense charged is within the treaty, and [3] by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty."[7] The third inquiry focuses

---

[6] *Escobedo v. United States*, 623 F.2d 1098, 1101 (5th Cir. 1980).

[7] *Id.* (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)) (internal quotation marks omitted); *see also Ntakirutimana v. Reno*, 184 F.3d 419, 423 (5th Cir. 1999); *Gusikoff v. United States*, 620 F.2d 459, 461 (5th Cir. 1980).

only on "whether there is any competent evidence tending to show probable cause;" "[t]he weight and sufficiency of that evidence" is not our concern.[8]

Balzan's only challenge to his extradition is that the offense charged is not within the treaty. The certifying magistrate concluded otherwise, relying on Texas Penal Code § 31.03. With exceptions not relevant here,[9] whether a theft offense under that Section may be punished with more than a year's imprisonment turns on the value of the property stolen.[10] Outside of those exceptions, a violation of § 31.03 may not be punished with more than a year's imprisonment unless the value of the property obtained is at least $1,500.[11] Accordingly, to determine whether the offense charged is within the treaty, we consider the value of the objects that Balzan allegedly obtained by fraud.

While it is well-settled that our review of evidence *indicating guilt* asks only whether there is "any competent evidence" supporting a determination of probable cause, we could, in theory, require more evidence to conclude that the value of goods obtained *brings an offense within an extradition treaty*. We decline to do so. Suppose Argentina enacted a penal scheme identical to Texas's. If it did, and sought to extradite a fugitive charged with swindling $1,500, our review of the fugitive's guilt would ask only whether any competent evidence supported his extradition. Applying a more demanding standard to determine whether the fugitive's alleged offense fell within the treaty could produce worrisome results. We could conclude, for example, that evidence supported a probable-cause

---

[8] *Gusikoff*, 620 F.2d at 462 (quoting *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192) (internal quotation marks omitted); *see also Ludecke v. U.S. Marshal*, 15 F.3d 496, 497, 499 (5th Cir. 1994); *Escobedo*, 623 F.2d at 1102.

[9] *See, e.g.*, TEX. PENAL CODE § 31.03(e)(4)(B) ("regardless of value, the property is stolen from the person of another or from a human corpse or grave, including property that is a military grave marker"), *id.* at § 31.03(f).

[10] *See id.* at § 31.03(e).

[11] *See id.*

determination of guilt—i.e., that the fugitive may have fraudulently obtained $1,500, in violation of an Argentinean law whose maximum punishment is over one year—and simultaneously conclude that the conduct was not adequately punishable in Texas, *even though Texan and Argentinean law were identical*. This case is different, but the example makes plain that our normal, limited form of review should apply here and in general.[12] Our inquiry therefore remains "quite narrow;" we ask only whether any competent evidence tends to support the magistrate's probable-cause assessment of value.

We turn to that question now.

### III

The evidentiary rules governing ordinary civil and criminal trials do not control what may be admitted in an extradition hearing. Under 18 U.S.C. § 3190, a properly authenticated document is admissible at such a hearing.[13] Consequently, authenticated documents may serve as competent evidence in support of a magistrate's determination.[14]

The magistrate who conducted the extradition hearing found that "[t]he Government of Argentina submitted documents that were properly authenticated and certified." She relied on those documents in assessing probable cause. Balzan does not argue that the documents were improperly

---

[12] *Cf. Ornelas v. Ruiz*, 161 U.S. 502, 509 (1896) ("Whether an extraditable crime has been committed is a question of mixed law and fact, but chiefly of fact, and the judgment of the magistrate . . . that [the act charged] constitutes an extraditable crime, cannot be reviewed on the weight of the evidence.").

[13] *See* 18 U.S.C. § 3190; *see also Ntakirutimana*, 184 F.3d at 427 n.13 ("There is no dispute that all three declarations have been properly authenticated . . . . The authentication renders the documents admissible under 18 U.S.C. § 3190.").

[14] *See Escobedo*, 623 F.2d at 1103 (noting documents were admissible under 18 U.S.C. § 3190); *id.* at 1102 (holding that "this evidence establishes probable cause").

authenticated. Indeed, his brief cites § 3190 only once, when quoting from the government's complaint.

Balzan instead makes two arguments on appeal, both of which he raised in the district court. First, he characterizes the authenticated documents as "pleadings" and claims that they are therefore inadmissible. Second, he contends that the alleged offer of the $50,000 investment is irrelevant to the value of the goods that he obtained, and consequently, that even if the authenticated documents are considered, they do not support the magistrate's determination.

The first argument is wrong. Balzan relies on *Pullman Co. v. Bullard*, a personal-injury case in which we noted that "a party's pleadings are merely his contentions and are not evidence for himself unless admitted by his opponent."[15] This reliance is misplaced; in the extradition context, § 3190 controls. In any event, we note that the authenticated documents contained more than merely the government's contentions,[16] and that Balzan appears to have admitted to several of the facts described in those documents.[17]

The second argument is unpersuasive. Balzan allegedly promised Gonzalez a $50,000 investment. The government concedes that the $50,000 sum was not a promise of payment for the items that Balzan received, at least on this record. Balzan, moreover, convincingly explains that the value of a sample product may not reflect the value of a promised investment; an offer to invest $50,000 in thumbtack manufacturing, for example, does not make a sample thumbtack worth $50,000. But even though the amount of an investment offer does not *determine* the value of a sample product, an investment offer may still be

---

[15] 44 F.2d 347, 348 (1930).

[16] The record on appeal contains only limited portions of the relevant papers, but even that small excerpt includes a reference to "the declaration of Rubén Gonzalez" and a citation to "folio 543/544, 597/598, 6233 and 792."

[17] Balzan admitted, for example, to receiving at least two dresses, two jackets, a purse, and a shirt.

probative of worth. The alleged $50,000 investment offer implies that Gonzalez's work was valuable, including his numerous sketches. And that is not the only evidence in the record. Balzan also received several articles of clothing, including a gold-embroidered dress, bags with crystals, and two leather jackets. Given the limited scope of our review, that is evidence enough.

**\* \* \***

Because competent evidence supports the certifying magistrate's determination that Balzan committed an offense within the scope of the extradition treaty, we AFFIRM the district court's denial of his petition for habeas corpus.