**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kyle KALISH and William Harvey
Boren, Defendants-Appellants.**

No. 83–2540.

United States Court of Appeals,
Fifth Circuit.

May 29, 1984.

Rehearing and Rehearing En Banc
Denied June 28, 1984.

Dick DeGuerin, Houston, Tex., for Kalish.

Bennie E. Ray, Austin, Tex., for Boren.

Robert J. Wortham, U.S. Atty., Beaumont, Tex., Robert J. Erickson, Atty., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before THORNBERRY, WILLIAMS and GARWOOD, Circuit Judges.

THORNBERRY, Circuit Judge:

Kyle Kalish and William Boren were indicted in district court for various drug-related offenses stemming from a seizure of 48,000 pounds of marijuana at a farm near Jasper, Texas. Their pretrial motions to dismiss the indictment on double jeopardy grounds were denied and this interlocutory appeal followed. Finding no merit in defendants' claims, we affirm the district court's denial of the motions to dismiss.

*The First Prosecution*

Kyle Kalish [1] was involved in a marijuana smuggling operation in which participants met "mother ships" in the Gulf of Mexico to unload a cargo of marijuana onto smaller vessels. The smaller boats then deposited the marijuana at various sites along the Texas coast where it was picked up and delivered to a "stash farm" farther inland. In 1980, two separate indictments were returned in federal district court against thirty-three of the participants in this operation.

One indictment involved the seizure of 40,000 pounds of marijuana aboard the shrimp boat, EL COBRE, on December 10, 1979, by a government joint task force. That task force also seized the MR. JAKE, a vessel loaded with 100,000 pounds of marijuana on December 19, 1979, which led to a second indictment. Kyle Kalish was named in the MR. JAKE indictment.[2]

Kyle Kalish was tried for (1) conspiracy to import marijuana in violation of 21 U.S.C. § 963; (2) conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846; and (3) possession with intent to deliver marijuana in violation of 21 U.S.C. § 841(a)(1). The conspiracy charges contemplated a time frame starting at an unknown time and continuing up to and including December 19, 1979. The possession charge concerned the MR. JAKE seizure on December 19.

Kalish was convicted of conspiracy to possess with intent to distribute and with the substantive offense of possession with intent to distribute on December 19. He was acquitted of the conspiracy to import charge.

*The Second Prosecution*

After the MR. JAKE and EL COBRE prosecutions, the government received additional information linking Kalish's group to a larger smuggling venture operating out of Miami. This new evidence led to the indictment in the present case, which names forty-four other defendants. In this indictment, Kalish faces charges for distributing and possessing with intent to distribute 48,000 pounds of marijuana on December 3, 1979, in violation of 21 U.S.C. § 841(a)(1), and for importing the same quantity of marijuana in violation of 21 U.S.C. § 952. He is also charged with participating in the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) (the RICO charge).[3]

Kalish moved to dismiss the present indictment on double jeopardy grounds. The

---

**1.** We recount only the facts relating to appellant Kalish in this opinion because appellant Boren has adopted Kalish's arguments, asserting that their positions are identical for purposes of this appeal.

**2.** Kyle Kalish's brother, Steven Kalish, was also prosecuted for his involvement in the smuggling operation. A description of the events surrounding these two indictments is included in the opinion addressing Steven Kalish's appeal.

*United States v. Kalish,* 690 F.2d 1144 (5th Cir. 1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983).

**3.** Originally, the indictment also included conspiracy charges relating to the substantive offenses with which Kalish is charged. The district court, after a hearing on the matter, dismissed these conspiracy charges at the government's request.

district court denied the motion but, finding one of the double jeopardy claims to be non-frivolous, granted the motion for leave to take direct appeal of the order denying the motion to dismiss. Appellants Kalish and Boren were severed from the case, and further action against them was stayed pending appellate determination.

*Double Jeopardy*

The one issue the district court found to be non-frivolous (although without the support of precedent) was Kalish's claim that the government should have brought all charges arising out of the same transaction in a single proceeding. Kalish argues that the charges arising from the Jasper farm seizure are offenses that were part of the marijuana smuggling conspiracy for which he was prosecuted in 1980.

The substantive offenses of possessing and importing marijuana in the present indictment stem from a seizure of 48,000 pounds of marijuana at a farm near Jasper, Texas on December 3, 1979. The substantive offense for which Kalish was prosecuted in 1980 (possession with intent to deliver marijuana) arose from the MR. JAKE seizure on December 19, 1979. The 1980 conspiracy charges also stemmed from the MR. JAKE seizure, but the indictment contemplated an ongoing conspiracy ending on December 19, 1979, which seems to have encompassed the December 3, 1979 Jasper farm activities.

Without question, no double jeopardy problems exist concerning the earlier MR. JAKE substantive offenses and the Jasper farm substantive offenses now facing Kalish. Those crimes are entirely distinct. There is also no question that the Jasper farm substantive offenses are offenses that are separate from the 1980 conspiracy offenses in the sense that Kalish could have received separate punishments for those offenses. *See Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 1290, 43 L.Ed.2d 616 (1975) ("Thus, it is well recognized that in most cases separate sentences can be imposed for the conspiracy to do an

act and the subsequent accomplishment of that end."). Kalish argues, however, that the Jasper farm substantive offenses should have been charged as part of the 1980 conspiracy prosecution because these substantive offenses were part of that conspiracy. The issue to be addressed in this appeal, therefore, is whether the double jeopardy clause bars the government from first prosecuting a defendant for conspiracy to commit a crime, and then, in a separate proceeding, charging the same defendant with an underlying substantive offense which may have been the object of that conspiracy.[4]

The double jeopardy clause provides three protections:

> [It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)).

Kalish argues that the government's prosecution for a substantive offense after an earlier conviction for conspiracy to commit that substantive offense should be barred by the second of the above double jeopardy protections. Analysis of this issue must focus on whether the conspiracy offense and the underlying substantive offense are the "same offense" for purposes of this second double jeopardy protection.

The traditional test for determining whether two offenses arising out of the same act or transaction are the "same offense" for double jeopardy purposes was established in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine

---

**4.** We assume for purposes of this analysis that the Jasper farm substantive offenses could be considered to be part of the end to which the 1980 conspiracy was directed.

whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. 52 S.Ct. at 182. The test emphasizes the elements of the two crimes. "If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616 (1975). Courts have held that the two offenses, conspiracy and the substantive offense which was the object of the conspiracy (the underlying substantive offense), are separate crimes under the *Blockburger* test. *See, e.g., Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616; *United States v. Brunk*, 615 F.2d 210 (5th Cir.1980).

Kalish argues, however, that the *Blockburger* test is not the appropriate standard for cases involving separate prosecutions of conspiracy charges and the underlying substantive offenses.[5] This argument must fail in view of the Fifth Circuit's adoption of the *Blockburger* test as the proper standard for double jeopardy questions involving successive prosecutions of conspiracy offenses and underlying substantive offenses.

The Fifth Circuit's position on whether a prosecution for conspiracy could bar a subsequent prosecution for the underlying substantive crime was articulated in *United States v. Dunbar*, 591 F.2d 1190 (5th Cir.1979), *panel opinion adopted in relevant part and remanded*, 611 F.2d 985 (5th Cir.) (en banc), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980). In *Dunbar*, the defendant had been convicted on an indictment charging a conspiracy to possess Methaqualone with intent to distribute. In another indictment, the defendant was charged with distributing controlled substances in violation of 21 U.S.C. § 841(a)(1). Dunbar argued that, because the same evidence that was used to convict

him in the conspiracy trial would be used against him in the trial for the substantive offense, the double jeopardy clause should bar the second prosecution. In addressing the double jeopardy claim, the court stated:

A dominant factor in this interlocking procedural situation is that there can be no doubt, absolutely no doubt, that Dunbar's double jeopardy plea was totally devoid of merit. As far as we are aware, no court in this country has ever held that a defendant may not be indicted and tried once for a conspiracy and thereafter tried for the crime of distributing controlled substances, especially where, as here, the drug named in the conspiracy count is not the same as the drugs specified in the substantive counts. [citation omitted] A conspiracy to commit a crime and the crime itself are separate offenses and a defendant may be tried in separate trials for these offenses.

591 F.2d at 1192. The court then stated that the *Blockburger* standard is the classic test for determining whether two offenses are the same for double jeopardy purposes. 591 F.2d at 1192 (quoting *United States v. Smith*, 574 F.2d 308, 309–10 (5th Cir.), *cert. denied*, 439 U.S. 931, 99 S.Ct. 321, 58 L.Ed.2d 325 (1978)). Kalish argues that *Dunbar* does not apply to the present case because its holding was qualified by the fact that the drugs named in the two indictments were not identical. In determining that no double jeopardy problem existed, the court added the phrase, "especially where, as here, the drug named in the conspiracy count is not the same as the drugs specified in the substantive counts." 591 F.2d at 1192. We do not think this phrase was meant to preclude a second prosecution if the drug was the same as in the first prosecution. Instead, the purpose of the language seems to have been to strengthen the holding in that case, rather than to qualify the Fifth Circuit's position of the issue. This position was clearly stated in *United States v. Brunk*, 615 F.2d 210, 211 (5th Cir.1980):

---

5. The Supreme Court has recognized that the *Blockburger* test, while applicable to cases involving successive prosecutions, is not the only

standard courts have applied to such cases. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977).

With rare exceptions, conspiracy to commit a crime and the crime itself are separate offenses, outside the restraints of the double jeopardy clause. *Pinkerton v. United States*, 328 U.S. 640, 643–44, 66 S.Ct. 1180, 1181–82, 90 L.Ed. 1489 (1946); *United States v. Mock*, 604 F.2d 341, 344 (5th Cir.1979). We have opined that this maxim is especially accurate when the drug named in the conspiracy count is not the same as the drug in the substantive count. *United States v. Dunbar*, 591 F.2d at 1192.

The fact that the same drug was named in both prosecutions in the present case does not affect the outcome under the *Blockburger* test, nor does it preclude the application of that test to determine whether the offenses are the same for double jeopardy purposes. In *United States v. Garcia*, 589 F.2d 249 (5th Cir.), *cert. denied sub nom., Munoz v. United States*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979), the court applied the *Blockburger* test in a situation that was very similar to the present case. In *Garcia*, one of the appellants, Julian Jerrera Mendoza, had been tried earlier on charges of importing marijuana and possessing marijuana with intent to distribute. He was acquitted on the importation charge and convicted on the possession charge. Mendoza was later charged with conspiracy offenses that were related to the previously charged substantive offenses. The court found that

> the offenses of conspiracy to import and to possess marijuana with the intent to distribute and the substantive offenses of importation and possession with intent are sufficiently distinct, with each involving the proof of a fact not required for the conviction of the others, *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct.

180, 76 L.Ed. 306 (1932), to satisfy the requirements of the Double Jeopardy clause.

589 F.2d at 251.

Kalish argues that the *Blockburger* test has been discarded in complex conspiracy prosecutions, relying on *United States v. Marable*, 578 F.2d 151 (5th Cir.1978), and *United States v. Ruigomez*, 576 F.2d 1149 (5th Cir.1978), and on *United States v. Kalish*, 690 F.2d 1144 (5th ·Cir.1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983). Kalish's reliance on those cases is misplaced. Those cases involved a factual inquiry into whether the defendants were being charged with conspiracy twice for a transaction that was in fact only one conspiracy. The concern in those cases was that the government was trying to carve up a large conspiracy into smaller conspiracies and prosecute them separately. *See United States v. Phillips*, 664 F.2d 971, 1009 (5th Cir.1981), *cert. denied sub nom. Meinster v. United States*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).[6]

 The present case does not involve the prosecution of two conspiracy charges; it concerns a conspiracy prosecution followed by a charge for the underlying substantive offense. The appropriate standard for determining whether double jeopardy bars separate prosecutions, therefore, is the *Blockburger* test. *See United States v. Phillips*, 664 F.2d 971, 1005–06; *United States v. Dunbar*, 611 F.2d 985 (en banc court specifically adopting the panel's use of the *Blockburger* test as the proper method to analyze this type of double jeopardy claim). And under the *Blockburger* test, the offenses of conspiracy to commit a crime and the crime itself are separate offenses. *Iannelli v. United States*, 420

---

**6.** Kalish also relies on language from *United States v. Rodriguez*, 612 F.2d 906, 925 (5th Cir. 1980), *aff'd sub nom. Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), as support for the proposition that prosecution for his offense must be accomplished in the same proceeding. The court in *Rodriguez* stated, "our holding that double jeopardy is not offended by these conspiracy charges brought in a single proceeding does not extend to the multi-

ple prosecution area, and the Government would be well-advised to bring all of its charges (relating to a single conspiracy) in a single proceeding." 612 F.2d at 925. This cautionary language was made in the context of a double jeopardy problem involving two *conspiracy* charges. The concern was, once again, that the government would carve up a single conspiracy and prosecute it as separate conspiracies in separate trials.

U.S. 770, 95 S.Ct. 1284, 1293–94 n. 17, 43 L.Ed.2d 616 (1975).[7]

### The RICO Charge

 Kalish also argues that the double jeopardy clause should bar prosecution of the RICO charge in this case. Kalish is charged with participating in the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). As predicate offenses,[8] the RICO charge alleges that Kalish (1) aided and abetted the importation of 30,000 pounds of marijuana in May 1979, and (2) imported, possessed and distributed 48,000 pounds of marijuana on December 3, 1979 (the Jasper farm offenses). Kalish argues that prosecution of these predicate offenses should be barred by the double jeopardy clause because of his earlier prosecution for conspiracy to commit these offenses. Kalish argues that because the predicate offenses have double jeopardy problems, the RICO offense itself should be barred as a violation of the double jeopardy clause. But because we hold that Kalish's earlier prosecution for conspiracy does not bar prosecution of the substantive drug charges, Kalish's argument that the RICO charge is barred must fail.[9] There is no double jeopardy protection against the prosecution of the substantive charges; therefore, no derivative double jeopardy problems attach to the RICO charge which uses the same substantive charges as predicate offenses.

The district court's denial of the motions of appellants Kalish and Boren to dismiss on double jeopardy grounds is affirmed.

AFFIRMED.

---

**7.** Kalish also seems to confuse the nature of this case with the double jeopardy issue addressed in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). *Ashe* held that a former acquittal barred a subsequent prosecution because the controlling fact in both prosecutions (whether the defendant could be identified as the robber) had been found in the defendant's favor in the first prosecution. The principle of collateral estoppel prevented the state from pursuing a second prosecution in that case.

**8.** One of the elements the government must prove in a substantive RICO charge is that the

---

defendant committed at least two acts of racketeering designated in 18 U.S.C. § 1961(1). *United States v. Phillips,* 664 F.2d at 1011.

**9.** Although we need not reach the issue, it appears that even if there were double jeopardy problems in prosecuting the predicate offenses independently, the government could still use those acts as predicates for a RICO charge. *See United States v. Phillips,* 664 F.2d at 1015 ("a defendant may be convicted for the predicate acts which form the basis of a RICO charge and subsequently charged under RICO.")