**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raymond L. GUTHRIE, Jr., a/k/a Junior Guthrie, and Walter Graham Lewis, Defendants-Appellants.**

No. 84–4830.

United States Court of Appeals, Fifth Circuit.

May 14, 1986.

Rehearing and Rehearing En Banc Denied June 23, 1986.

357

Ferdinand J. Kleppner, Metairie, La., Edwin T. Mulock, Bradenton, Fla., for Guthrie.

Thomas E. Guilbeau, Lafayette, La., for Lewis.

D.H. Perkins, Jr., Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., Howard Cobb Parker, Asst. U.S. Atty., Lafayette, La., for plaintiff-appellee.

Before GEE, RUBIN, and DAVIS, Circuit Judges.

GEE, Circuit Judge:

In February 1984, a United States Grand Jury in the Western District of Louisiana returned a four-count indictment against Walter Lewis and Raymond Guthrie. That indictment charged Lewis and Guthrie with importation of marijuana in violation of 21 U.S.C. § 952, and possession of marijuana with an intent to distribute in violation of 21 U.S.C. § 841(a)(1). These charges stemmed from an alleged smuggling episode in Morgan City, Louisiana, aboard the vessel Miss Clarice between February 1 and April 15, 1979.

Lewis and Guthrie pled not guilty and later moved to quash the indictment on multiple grounds, but this motion was denied by the district court. Lewis and Guthrie now appeal that decision.

## I. WALTER LEWIS

In 1983, Lewis was charged by a United States Grand Jury in the Northern District of Florida with conspiracy to possess marijuana with an intent to distribute, as well as conspiracy to import marijuana. In response to a motion for a bill of particulars, the government cited the following episode:

> The importation, possession, and distribution of a multi-ton load of marijuana in the Morgan City area of Louisiana on or about April [sic] of 1979. This marijuana is believed to have been transported to the United States in the vessel "Miss Clarice."

There were no substantive charges for this episode, however. Following a trial, Lewis was found guilty of both conspiracy charges.

■ Lewis argues that his present indictment for the substantive offenses in the Morgan City smuggling episode was barred by the Constitution's prohibition of double jeopardy [1] since he had already been prosecuted for conspiracy for the same offense in Florida. This contention is meritless. It is firmly established that the offenses of conspiracy to commit a crime and the crime itself are separate, and a prosecution for the former does not bar a later prosecution for the latter. *United States v. Kalish,* 734 F.2d 194, 199 (5th Cir.1984).[2]

## II. RAYMOND GUTHRIE

The Florida grand jury which indicted Lewis also indicted Raymond Guthrie on two counts of conspiracy, and Guthrie, like Lewis, was found guilty of those charges. The Florida grand jury additionally indicted Guthrie for engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, but he was acquitted of this charge. At trial, the government introduced evidence of several smuggling episodes—including the one in Morgan City in 1979—to prove the continuing criminal enterprise charge. Guthrie argues that his present indictment in the Western District of Louisiana for the substantive offenses stemming from the Morgan City episode should be dismissed on grounds both of double jeopardy and prosecutorial misconduct. We consider each of these arguments in turn.

### A. *Double Jeopardy*

■ Where the same conduct violates two statutory provisions, the first step in a double jeopardy analysis is to determine whether Congress intended that each violation be a separate offense. *Garrett v. United States,* —— U.S. ——, ——, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, 771 (1985). "If Congress intended that there be only one offense—that is, defendant could be convicted under either statutory provision for a single act, but not under both—there would be no statutory authorization for a subsequent prosecution after conviction of one of the two provisions, and that would end the double jeopardy analysis." *Id.*

In *United States v. Chagra,* 669 F.2d 241, 261–262 (5th Cir.1982), we held that Congress intended to prevent cumulative penalties for a continuing criminal enterprise violation and its predicate offenses. Citing *Chagra,* we have since held that the predicate offenses underlying a § 848 continuing criminal enterprise violation are lesser included offenses of the continuing criminal enterprise that cannot support a separate conviction or sentence. *United States v. Oberski,* 734 F.2d 1030, 1032 (5th Cir.1984).

Very recently, however, the Supreme Court squarely rejected the rationale of *Chagra.* In *Garrett v. United States,* supra, the defendant challenged on double jeopardy grounds a continuing criminal en-

---

**1.** The Fifth Amendment to the U.S. Constitution declares, in pertinent part, that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

**2.** Of course, if a controlling fact in both prosecutions had been found in the defendant's favor in the first prosecution for conspiracy, collateral estoppel would bar the later prosecution on the substantive offense. *Kalish,* supra, 734 F.2d at 199 n. 7 [citing *Ash v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) ].

terprise prosecution which charged predicate offenses that occurred between 1976 and 1981. The defendant had been previously convicted of one of those predicate offenses, a Washington state episode which took place in 1979 and 1980. The Court [3] declared that:

> [T]he language, structure, and legislative history of the Comprehensive Drug Abuse, Prevention and Control Act of 1970, however, show in the plainest way that Congress intended the CCE provision to be a separate criminal offense which was punishable in addition to, and not as a substitute for, the predicate offenses. —— U.S. at ——, 105 S.Ct. at 2412, 81 L.Ed.2d at 772.

In view of this unequivocal statement by the Court, it is clear to us that our language to the contrary in *Chagra* has been disapproved. Hence, our holding in *Oberski*, supra—that the predicate offense of a continuing criminal enterprise violation is a lesser included offense—which relied upon the language in question in *Chagra* must be viewed as disapproved as well.

After concluding in *Garrett* that Congress intended to permit prosecution for both the predicate offenses and the continuing criminal enterprise offense, the Supreme Court undertook the second step of a double jeopardy analysis. That step is a determination whether a continuing criminal enterprise offense is considered the "same offense" as one or more of its predicate offenses within the meaning of the Double Jeopardy Clause. —— U.S. at ——, 105 S.Ct. at 2415, 85 L.Ed.2d at 776. The Court noted:

> Quite obviously, the continuing criminal enterprise offense is not, in any common sense or literal meaning of the term, the "same" offense as one of the predicate offenses. The CCE offense requires the jury to find that the defendant committed a predicate offense, and in addition that the predicate offense was part of a

continuing series of predicate offenses undertaken by the defendant in concert with five or more other persons, that the defendant occupied the position of an organizer or manager, and that the defendant obtained substantial income or resources from the continuing series of violations. *Id.*

The Court then considered whether the predicate offenses of a continuing criminal enterprise violation are lesser included offenses of the latter. The Court distinguished *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), wherein it was held that where the misdemeanor of joyriding was a lesser included offense of felony auto theft, a prosecution for the misdemeanor barred a second prosecution for the felony. The Court explained:

> The defendant in *Brown* had stolen an automobile and driven it for several days. He had engaged in a single course of conduct—driving a stolen car. The very same conduct would support a misdemeanor prosecution for joyriding or a felony prosecution for auto theft, depending only on the defendant's state of mind while he engaged in the conduct in question. Every moment of his conduct was as relevant to the joyriding charge as it was to the auto theft charge. —— U.S. at ——, 105 S.Ct. at 2416, 85 L.Ed.2d at 777.

But on the facts before it, the Court observed, "the situation is quite different." *Id.* The Court noted that the continuing criminal enterprise indictment charged several predicate offenses which occurred between 1976 and 1981, while the predicate offense for which the defendant had been previously convicted took place in 1979 and 1980. And thus, the Court reasoned:

> Obviously the conduct in which Garrett was charged with engaging in the Florida indictment, when compared with that with which he was charged in the Wash-

---

**3.** The dissent refers to the "Garrett plurality." Justice Rehnquist's opinion was joined by four other members of the Court, however; and although Justice O'Connor, one of the four who joined in the Court's opinion, did write a separate concurrence, Justice Rehnquist's opinion has full precedential authority: Justice O'Conner's concurrence closes with the words "I join the opinion of the Court."

ington indictment, does not lend itself to the simple analogy of a single course of conduct—stealing a car—comprising a lesser included misdemeanor within a felony. Here the continuing criminal enterprise was alleged to have spanned more than five years; the acts charged in the Washington indictment were alleged to have occurred on single days in 1979 and 1980, respectively. Whenever it was during the five-and-one-half-year period alleged in the indictment that Garrett committed the first of the three predicate offenses required to form the basis for a continuing criminal enterprise prosecution, it could not then have been said with any certainty that he would necessarily go ahead and commit the other violations required to render him liable on a continuing criminal enterprise charge. Every minute that Nathaniel Brown drove or possessed the stolen automobile he was simultaneously committing both the lesser included misdemeanor and the greater felony, but the same is simply not true of Garrett. His various boat-load smuggling operations in Louisiana, for example, obviously involved incidents of conduct wholly separate from his "mother boat" operations in Washington. *These significant differences caution against ready transposition of the "lesser included offense" principles of double jeopardy from the classically simple situation presented in Brown to the multi-layered conduct, both as to time and to place, involved in this case.* —— U.S. at ——-——, 105 S.Ct. at 2416–2417, 85 L.Ed.2d at 777–778 (emphasis supplied).

■ The Court, however, stopped just short of holding that a continuing criminal enterprise's predicate offenses were not lesser included offenses, and satisfied itself with an expression of "serious doubts" as to whether the contrary was the case. —— U.S. at ——, 105 S.Ct. at 2418, 85 L.Ed.2d at

779. We, however, find the reasoning of the Court compelling and thus hold that predicate offenses of a continuing criminal enterprise violation are not lesser included offenses of the continuing criminal enterprise for purposes of the Fifth Amendment's Double Jeopardy Clause.[4]

### B. *Prosecutorial Misconduct*

Guthrie argues that the government's prosecution for the substantive offenses stemming from the Morgan City smuggling episode represents prosecutorial misconduct, violative of the Due Process Clause of the Fifth Amendment, in light of the fact that this indictment came only after the government had been defeated on the continuing criminal enterprise charges and Guthrie had appealed the conspiracy conviction from the Florida trial.

■ For the government to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort. *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). In *United States v. Krezdorn,* 718 F.2d 1360 (5th Cir.1983) (en banc), we established guidelines for resolving a claim of prosecutorial vindictiveness:

> If the defendant challenges as vindictive a prosecutorial decision to increase the number or severity of charges following a successful appeal, the court must examine the prosecutor's actions in the context of the entire proceedings. If any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created. In trying the issue of vindictiveness, the prosecutor may offer proof of the sort suggest-

---

**4.** We note the dissent does not take issue with the Supreme Court's reasoning and at no point argues for the proposition that a continuing criminal enterprise's predicate offense is a lesser included offense. Indeed, the dissent's prin-

cipal concern, aside from prosecutorial vindictiveness, seems to be collateral estoppel. While there may be some merit in this argument, Guthrie has never raised it, either here or in the district court.

ed in *Hardwick* [558 F.2d 292 (5th Cir. 1977)] that as a matter of fact his actions were not vindictive. The burden of proof (by a preponderance of the evidence) remains on the defendant who raised the affirmative defense. If, on the other hand, the course of events provides no objective indication that would allay a reasonable apprehension by the defendant that the more serious charge was vindicative, i.e., inspired by a determination to "punish a pesky defendant for exercising his legal rights," a presumption of vindictiveness applies.... *Id.* at 1365. (emphasis supplied).

■ The proper venue for the Morgan City offense was the Western District of Louisiana. This fact, when combined with the knowledge that his appeal of the Florida conspiracy conviction was *unsuccessful*, should have indicated to a reasonable minded defendant in Guthrie's situation that the government's decision to seek the present indictment was motivated by some purpose other than a vindictive desire to exact retribution for his appeal. The Supreme Court has made clear that "the Due Process Clause is not offended by *all* possibilities of increased punishment ... but only by those that pose a realistic likelihood of 'vindictiveness.'" *United States v. Goodwin,* supra, 457 U.S. at 384, 102 S.Ct. at 2494, citing *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974). Therefore, we have little difficulty in rejecting this claim.

## CONCLUSION

We hold that the present prosecution of Walter Lewis for the substantive offenses arising out of the Morgan City episode is not barred by his prior prosecution for conspiracy. We further hold that the Morgan City offense for which Raymond Guthrie is currently charged is not a lesser included offense of the continuing criminal enterprise for which he was prosecuted in Flor-

ida, and that Guthrie's claim of prosecutorial misconduct is without merit. Accordingly, the denial of relief by the court below is

AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, dissenting:

I respectfully dissent because, unlike my brothers, I would not extend the opinion in *Garrett v. United States,*[1] and because I understand the double jeopardy clause to afford greater protection against successive prosecutions than they allow it. Successive prosecutions raise double jeopardy concerns that multiple punishments imposed at a single trial do not.[2] When conviction of a greater crime cannot be had without proving every element of a lesser crime, the double jeopardy clause bars a separate prosecution of the lesser crime after conviction of the greater one.[3]

In *Garrett,* the defendant had in March, 1981 pleaded guilty to, and been convicted of, importing marijuana. He was later indicted for participating in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848 which requires, *inter alia,* proof of a series of three or more drug-related offenses. The marijuana offense to which Garrett pleaded guilty was included in the CCE indictment as one of the necessary predicate offenses. The criminal enterprise, however, was alleged to have continued from January 16, 1976, to July 16, 1981, encompassing predicate offenses that occurred after the guilty plea.

After discussing the double jeopardy question at length, the *Garrett* plurality states, as my brothers note, that it has "serious doubts as to whether the offense to which Garrett pleaded guilty in Washington was a 'lesser included offense' within the CCE charge so that the prosecution of the former would bar a prosecution of

1. —— U.S. ——, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985).

2. *See Jordan v. Virginia,* 653 F.2d 870, 873 (4th Cir.1980).

3. *See Id.; Harris v. Oklahoma,* 433 U.S. 682, 682–683, 97 S.Ct. 2912, 2913, 53 L.Ed.2d 1054 (1977).

the latter."[4] The Court did not, however, decide that question, for it continued:

> But we may assume, for purposes of decision here, that the Washington offense was a lesser included offense, because in our view Garrett's claim of double jeopardy would still not be sustainable.[5]

The plurality then rested its holding on an entirely different ground, the reasoning of the 1912 opinion, *Diaz v. United States.*[6] In that case, the Court had rejected the double jeopardy claim of a defendant convicted of assault, then tried a second time for murder when the victim died after the first trial had concluded. Because the murder charge could not have been brought at the time of the assault trial, the opinion concluded, the defendant had not been twice in jeopardy. The *Garrett* plurality followed the same course:

> In the present case, as in *Diaz*, the continuing criminal enterprise charged against Garrett in Florida had not been completed at the time that he was indicted in Washington.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> We think this evidence not only permits but requires the conclusion that the CCE ... was under *Diaz* a different offense from that charged in the Washington indictment.[7]

The *Garrett* plurality opinion, therefore, concluded that the CCE prosecution of Garrett "does not violate the Double Jeopardy Clause under the facts of this case...."[8] Neither the words nor the logic of the opinion imply that a predicate offense would not be considered a lesser included offense within a CCE charge once the CCE had been completed.

Justice O'Connor's concurrence rested on a similar analysis:

Where the defendant continues unlawful conduct after the time the Government prosecutes him for a predicate offense, I do not think he can later contend that the Government is foreclosed from using that offense in another prosecution to prove the continuing violation of § 848.

&ast; &ast; &ast; &ast; &ast; &ast;

Moreover, I note that we do not decide in this case whether a defendant would have a valid double jeopardy claim if the Government failed in a later prosecution to allege and present evidence of a continuing violation of § 848 after an earlier conviction for a predicate offense. Certainly the defendant's interest in finality would be more compelling where there is no indication of continuing wrongdoing after the first prosecution.[9]

My brothers correctly note that the plurality stopped short of the result they now reach. Taking the carefully chosen words of Justice O'Connor's concurrence into account, even though she ultimately joined in the plurality opinion, I think their willingness to further limit the double jeopardy clause is unwarranted. The continuing criminal enterprise with which Guthrie was charged had ended before his acquittal. The Morgan City smuggling charge that Guthrie now protests was relied upon as a predicate offense to prove the CCE charge: It was the centerpiece of the government's case, involving eight witnesses and hundreds of pages of testimony, all of which must now be repeated in an attempt to prove a second time that Guthrie committed the same criminal act.

The government denies prosecutorial misconduct, asserting that it could not have charged the Morgan City offense in the CCE indictment because venue for that offense was improper in Florida where the

---

4. *Id.,* —— U.S. at ——, 105 S.Ct. at 2418, 85 L.Ed.2d at 779.

5. *Id.*

6. 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912).

7. —— U.S. at ——, 105 S.Ct. at 2418, 85 L.Ed.2d at 779.

8. *Id.,* —— U.S. at ——, 105 S.Ct. at 2419, 85 L.Ed.2d at 780.

9. *Id.,* —— U.S. at ——, 105 S.Ct. at 2420, 2422, 85 L.Ed.2d at 784 (O'Connor J., concurring).

 

CCE and conspiracy charges were brought. This rationalization does not withstand analysis. First, venue is not a jurisdictional limitation but a privilege that may be waived by the defendant.[10] The government was free to include the Morgan City offense in the Florida indictment, leaving to Guthrie the choice of objecting to the improper venue or of waiving the venue question and defending himself from all charges in a single proceeding. More important, venue for the offenses tried in Florida was also proper in Louisiana, where the Morgan City episode took place, because that episode was included as a predicate offense in both the conspiracy and the CCE charges.[11] Thus, all charges could have been brought in Louisiana at a single trial, and respect for proper venue did not necessitate successive prosecutions.

The concern expressed by the *Garrett* plurality, that in some circumstances a criminal might insulate himself from CCE charges by pleading guilty in advance to a single minor predicate offense, has no basis when the CCE prosecution is brought first. The government then has full control. If, with full knowledge of the facts, it chooses—as it did with Guthrie—to prosecute first for the CCE and not then to include separate charges for each of the predicate offenses, the government should be held to its choice. Otherwise the government might prosecute a defendant for CCE and then, if he were acquitted, as Guthrie was, or if the government were dissatisfied with his sentence, it might prosecute him not only for one but for each of the predicate offenses seriatim. More than collateral estoppel bars this kind of governmental manipulation. This is precisely the kind of peril the double jeopardy clause ·was designed to prevent. The Constitution does not permit prosecutors so much rope for repeated attempts to string up the accused.

Guthrie should not be forced to defend himself a second time against a crime that was relied upon as a necessary element of proof in an earlier trial at which the prosecution was unsuccessful.

**10.** *United States v. Marcello,* 423 F.2d 993, 1001–06 (5th Cir.), *cert. denied,* 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970); 2 C. Wright, Federal Practice and Procedure: Criminal § 306 (2d ed.1982).

**11.** *See United States v. Fry,* 413 F.Supp. 1269, 1273 (E.D.Mich.1976), *aff'd mem.,* 559 F.2d 1221

(6th Cir.1977); 2 C. Wright, Federal Practice and Procedure: Criminal § 303 at 205 (2d ed.1982); *United States v. Diaz,* 685 F.2d 252, 255 (8th Cir.1982); *Downing v. United States,* 348 F.2d 594, 598 (5th Cir.), *cert. denied,* 382 U.S. 901, 86 S.Ct. 235, 15 L.Ed.2d 155 (1965).